IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

MARGERY FREIDA MOCK and ERIC         *
SCOTT OGDEN, JR., individually and on   *
behalf of others similarly situated,         *
                                                        *
    Plaintiffs                                  *
                                                        *
    v.                                            * Case Number: 2:18-cv-25
                                                        *
GLYNN COUNTY, GEORGIA; E. NEAL      *
JUMP, Glynn County Sheriff; ALEX          *
ATWOOD, Glynn County Chief Magistrate  *
Judge; and B. REID ZEH III, Glynn County  *
Misdemeanor Public Defender,                *
                                                        *
    Defendants                                *

**DEFENDANTS GLYNN COUNTY, GEORGIA AND E. NEAL JUMP'S RESPONSE TO
PLAINTIFFS' REQUEST FOR PRELIMINARY INJUNCTION**

       COME NOW Defendants Glynn County, Georgia ("Glynn County") and E. Neal Jump

("Jump"), and file this brief in opposition to Plaintiffs' Motion for Preliminary Injunction, and show

the Court the following:

**I.**     **Introduction**

       ***a.***      ***Plaintiffs' Request for Injunctive Relief***

       On March 9, 2018, Plaintiffs filed a Class Action Complaint ("Complaint") against

Defendants in the above-styled case seeking redress for an alleged unconstitutional bail policy for

people accused of misdemeanor crimes in Glynn County. Plaintiffs' Complaint requests a temporary

restraining order and also seeks an injunction enjoining Defendants Jump and Glynn County from

1

prospectively detaining arrestees "solely for their inability to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve court appearance and public safety." Dkt. No. 1, p. 27, ¶ h.  Contemporaneously with filing the Complaint, Plaintiffs filed a Motion for a TRO, a Motion for Preliminary Injunction, and a Motion for Class Certification.  Dkt. Nos. 4-6. Plaintiffs' Motion for a TRO sought to immediately enjoin the continued detention of Plaintiffs Mock and Ogden allegedly without adequate constitutional protections, while Plaintiffs' Motion for a Preliminary Injunction sought expedited relief on behalf of all unnamed members of the proposed class of Plaintiffs ("Bail Class") that suffer, or will suffer, the same alleged unconstitutional detention. Dkt. Nos. 5 & 6.

Plaintiffs Mock and Ogden were both arrested for criminal trespass on March 7, 2018. Dkt. No. 1, pp. 2-3, ¶ 4.  They both were released following an appearance before Defendant Atwood on March 9, 2018.  According to Plaintiffs, they were released on "OR" after "Defendant Judge Atwood inquired into both Ms. Mock and Mr. Ogden's financial circumstances and housing situation."[1] Dkt. No. 18, p. 2; Recognizance Bonds, Ex. "C".  Thereafter, Plaintiffs filed a Motion to Withdraw their request for a TRO. Dkt. No. 18. Plaintiffs' Motion for a Preliminary Injunction remains pending and Plaintiffs seek to enjoin Defendants Glynn County and Jump "from jailing members of the proposed

---

[1] Plaintiff Ogden was booked at 12:50 a.m. on March 7, 2018 and released on March 9, 2018 at 4:55 p.m.  Plaintiff Mock was booked at 12:42 a.m. on March 7, 2018 and released on March 9, 2018 at 5:17 pm. Booking Sheets, Ex. "A".  Criminal arrest warrants were issued on March 7, 2018 for Plaintiffs.  Criminal Arrest Warrants, Ex. "B".

Bail Class without an individualized hearing and adequate procedural safeguards . . ." Dkt. No. 6, pp. 20-21.

### b.    Bail Procedure for Arrestees on Misdemeanor Charges

The present action challenges the misdemeanor bail procedures utilized by the court system in Glynn County.  Dkt. No. 1. At all times relevant to the Complaint, under the authority provided by O.C.G.A. § 17-6-1, a bail schedule has been in place that provides a set bail amount for misdemeanor offenses. Bail Schedule, Ex. "D".  If a person is arrested on a misdemeanor charge, after booking, the arrestee can secure immediate release by posting bond in the amount listed on the bail schedule.  Aff. of Atwood, Ex. "E".  At the time of Plaintiffs' arrests, if an arrestee did not post bond, he or she was detained and, unless otherwise released, brought to an initial appearance before a Glynn County judge within 48 hours after an arrest without a warrant, and within 72 hours for an arrest pursuant to a warrant. Ex. "E".  Typically, the initial appearance of arrestees occurs at a regularly scheduled court date on Mondays, Wednesdays and Fridays. Ex. "E". Until recently, there was not a written procedure utilized to determine whether a misdemeanor arrestee was indigent or financially unable to meet bail, and no such procedure or requirement was mandated by O.C.G.A. § 17-6-1. Ex. "E". Generally, an arrestee was questioned at the initial appearance on matters that would allow the presiding judge to evaluate bail issues and the need for appointed counsel, which often included questions touching upon financial circumstances and ties to the community. Ex. "E". These types of questions were asked to Plaintiffs Mock and Ogden, as acknowledged by Plaintiffs. Dkt. No. 18, p. 2, ¶ 5.  Until recently, however, there was no order in place requiring that judges in Glynn County inquire as to the financial circumstances of each arrestee as to bond determinations in misdemeanor cases, nor was there a set procedure in place that guided such an inquiry. Ex. "E".

On March 28, 2018, the General Assembly passed SB 407 that, *inter alia*, amends Georgia's

bond statute. SB 407, Ex. "F". Specifically, SB 407, which is expected to be signed into law in the

very near future,  amends O.C.G.A. §§ 17-6-1 and 17-6-12.  Ex. "F", pp. 12-14, §§ 2-4 & 2-5. One

notable addition to O.C.G.A. § 17-6-1(e) provides, as follows:

> (2) When determining bail, as soon as possible, the court shall
> consider:
>  (A) The accused's financial resources and other assets, including
> whether any such assets are jointly controlled;
>  (B) The accused's earnings and other income;
>  (C) The accused's financial obligations, including obligations to
> dependents;
>  (D) The purpose of bail; and
>  (E) Any other factor the court deems appropriate.

Ex. "F", p. 12.  Due to his current position as Legislative Chair of the Georgia Council of Magistrate

Court Judges, Defendant Atwood was aware, prior to notice of this lawsuit,  of the proposed changes

to Georgia's bond statute, including the revision requiring consideration of an arrestee's financial

circumstances for purposes of determining bail. Ex. E. Prior to notice of this lawsuit, Defendant

Atwood discussed these proposed revisions with members of the judiciary and understood the

position of the Georgia Criminal Justice Reform Council, the Office of the Governor of Georgia, and

some members of the Georgia General Assembly on this issue.  Ex. E. After passage of SB 407,

Defendant Atwood participated in drafting a Standing Bail Order ("SBO"), consistent with the

requirements of SB 407, that has been implemented by the detention center and court system in

Glynn County. Ex. "E". On April 9, 2018, Judge Bart G. Altman executed and filed the SBO. *SBO,*

Ex. "G".

The recently-enacted SBO re-adopts and re-affirms the bail schedule that has been in place

in Glynn County. Ex. "G". However, it also requires that arrestees otherwise eligible for release who

are unable for financial reasons to pay a secured or money bond pursuant to the bail schedule, be released on the arrestee's own recognizance or on an unsecured bond. Ex. "G", p. 2. The SBO sets forth a detailed procedure to ensure that an arrestee's indigent status and financial circumstances can fairly be determined and considered on an individual basis. Id. pp. 2-4. The SBO requires that any arrestee who is otherwise eligible for release, but unable to pay the bail amount set forth in the bond schedule, be provided with an affidavit to be completed after booking. The affidavit allows the arrestee to swear to his or her financial circumstances and ability to post a bond in order for a bail determination to be made. Id.; Aff. of Indigency, Ex. "H". The SBO requires that a bail determination be made for arrestees charged with misdemeanor offenses at the initial appearance which "shall occur within forty-eight (48) hours from an arrest made without a warrant, or within seventy-two (72) hours from an arrest pursuant to warrant." Ex. "G", p. 3. The affidavit is presented to an impartial judicial officer before or at the time of the initial appearance so that an individualized determination of bail can be made with consideration of the financial circumstances of the arrestee. Id. This procedure set forth in the SBO has been implemented and is currently being followed by the courts in Glynn County. Ex. "E". In fact, the judges have gone beyond the requirements of the SBO and are ensuring that every arrestee charged with a misdemeanor offense who indicates an inability to meet the set bail amount on the bail schedule is provided a bail determination, including a determination of the inability to pay a monetary bail, within 48 hours. Ex. "E". Arrestees charged with a misdemeanor violation or a violation of a local ordinance who are otherwise eligible for release but are unable, because of their poverty and financial circumstances, to pay a secured or money bail are released on their recognizance without making a secured bail or are released on an unsecured bond. Ex. "E". Currently, there are no detainees arrested for misdemeanor offenses in the

5

Glynn County Detention System, who are otherwise eligible for release, but have been detained longer than 48 hours due to their poverty or financial inability to make bond.  Aff. of Corbett, Ex. "I".

## II.    Argument

### A.    Introduction

This case is just one of many recent constitutional challenges to bond systems that allegedly requires indigent arrestees on misdemeanor offenses to post a secured money bond in an amount set in a bond schedule to avoid pretrial detention. *See, e.g., Edwards v. Cofield*, No. 3:17–cv–321-WKW, 2018 WL 1413384 (M.D. Ala. March 21, 2018);  *ODonnell v. Harris County (ODonnell I)*, 251 F.Supp.3d 1052 (S.D. Tex. 2017), *affirmed as modified*, 882 F.3d 528 (5th Cir. 2018); *ODonnell v. Harris County (ODonnell II), 882 F.3d 528 (5th Cir. 2018); Walker v. City of Calhoun*, No. 4:15-cv-0170-HLM, 2017 WL 2794064 (N.D. Ga. June 16, 2017), *appeal docketed*, No. 17–13139 (11th Cir. July 13, 2017); *Jones v. City of Clanton*, No. 2:15-cv-34-MHT, 2015 WL 5387219 (M.D. Ala. Sept. 14, 2015). The Eleventh Circuit is poised to firmly address the constitutional issues raised in these types of cases, including many of the exact issues raised in the present action, as *Walker v. City of Calhoun*, No. 17–13139 (11th Cir. docketed July 13, 2017), is currently pending before the Eleventh Circuit.

For several reasons, however, Plaintiffs' motion for a preliminary injunction in this case fails regardless of the resolution the Eleventh Circuit reaches on these issues in *Walker*. First, Glynn County and Sheriff Jump do not have policy-making authority over bail determinations for indigent persons arrested on misdemeanor offenses and, thus, cannot be directed to take any action on this subject.  Moreover, even if Plaintiffs had sought an injunction against the appropriate policy-making

6

authority, no injunction can be granted as the current bail policy is constitutional in all respects. None of the additional procedural safeguards Plaintiffs seek are constitutionally required. Finally, Plaintiffs' request for an injunction necessarily fails because Plaintiffs have not identified with specificity the acts it seeks to restrain or require that would permit this Court to fashion an order that meets the requirements of Federal Rule of Civil Procedure 65.

### B. *Preliminary Injunction Standard*

"A preliminary injunction is an extraordinary remedy never awarded as of right. In each case, courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). A plaintiff seeking a preliminary injunction must make four showings: "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20, 129 S.Ct. 365. A plaintiff must clearly meet the burden of persuasion on these four issues. *Four Seasons Hotels and Resorts, B.V. v. Consorcio Barr, S.A.*, 320 F.3d 1205, 1210 (11th Cir.2003); *accord Winter*, 555 U.S. at 22, 129 S.Ct. 365.

The decision to grant or deny a preliminary injunction is in the sound discretion of the district court. *Palmer v. Braun*, 287 F.3d 1325, 1329 (11th Cir. 2002). If "facts in dispute are not material to the preliminary injunction sought," the court "need not hold an evidentiary hearing." *McDonald's Corp v. Robertson*, 147 F.3d 1301, 1313 (11th Cir. 1998). "An evidentiary hearing is required for entry of a preliminary injunction only where facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue." *Cumulus Media, Inc. v. Clear Channel Commons, Inc.*, 304 F.3d 1167, 1178 (11th Cir. 2002)(internal quotation marks and

citations omitted). If a court issues an injunction, the court's order must "state its terms specifically" and must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed.R.Civ.P. 65(d)(1); *accord Schmidt v. Lessard*, 414 U.S. 473, 475–77, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974); *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1203 (11th Cir.2001).

### C. *Plaintiffs are not entitled to the requested injunctive relief against Glynn County or Sheriff Jump as neither party has policy-making authority over misdemeanor bail determinations for indigents.*

#### 1) Glynn County

In *Grech v. Clayton County*, the Eleventh Circuit stated, "a county is liable under § 1983 only for acts for which the county is actually responsible." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir.2003)(citing *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001)). To that end, "a plaintiff must show that the local governmental entity, . . . the county, has authority and responsibility over the governmental function in issue." *Id.* at 1330. Here, the governmental function at issue is the timely consideration of a misdemeanor arrestee's indigency status in determining whether a monetary bail is appropriate and whether, based on financial circumstances, the arrestee should be released on a reduced bail amount, recognizance, or an unsecured bond. Because Glynn County has no authority or responsibility over this governmental function, there can be no liability against it, and there can be no injunction against it.

Whether an official or entity is the final policymaker is a question of state law reserved for the judge to determine. *Doe v. Sch. Bd. of Broward Cnty., Fla.*, 604 F.3d 1248, 1264 (11th Cir.2010) (*internal quotation omitted*). The individual or entity must in fact possess "the authority and

responsibility for establishing final policy with respect to the issue in question." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir.1989) (finding "[physician's assistant] was the sole and final policymaker with respect to medical affairs at the road prison.").This final policymaker must have then made "a deliberate choice to follow a course of action ... from among various alternatives," which resulted in the deprivation of the plaintiff's rights. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483–84, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Whether an official has "final policymaking authority" in a particular area is a question of state law. *McMillian v. Monroe Cnty., Ala.*, 520 U.S. 781, 785–86, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997).

As mentioned above, Georgia law establishes the procedure for bail that is required to be followed. O.C.G.A. § 17-6-1 – titled "[w]here offenses bailable; procedure; schedule of bails; appeal bonds" – makes clear authority and responsibility to make bail determinations rests with judges in Georgia. O.C.G.A. § 17-6-1(a) provides that certain enumerated offenses are " bailable only before a judge of the superior court." O.C.G.A. § 17-6-1(b)(1) states that all other offenses "are bailable by a court of inquiry." In terms of the challenged use of a bail schedule, it is judges in this State that implement and execute any such schedule:

> Except as provided in subsection (a) of this Code section or as otherwise provided in this subsection, the judge of any court of inquiry may by written order establish a schedule of bails and unless otherwise ordered by the judge of any court, a person charged with committing any offense shall be released from custody upon posting bail as fixed in the schedule.

O.C.G.A. § 17-6-1(f)(1). In addition, as to the decision to release a misdemeanor arrestee on his or her own recognizance - which is what Plaintiffs believe should occur with indigent arrestees accused of misdemeanor offenses - this determination can only be made by a judge. *See* O.C.G.A. § 17-6-12 (c) ("the judge of any court having jurisdiction over a person charged with committing an offense

against the criminal laws of this state shall have authority, in his or her sound discretion and in appropriate cases, to authorize the release of the person upon his or her own recognizance only"). Moreover, the amendments to O.C.G.A. § 17-6-1, set forth in SB 407, will require that the court, meaning judges, make determinations of bail amounts and the financial circumstances of arrestees in determining bail. Ex. "F", at 12.

Thus, it is clear that Glynn County is not the policy-making authority over bail determinations for indigent persons charged with misdemeanor offenses. As stated above, "[a] local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.' *Pembaur v. City of Cincinnati*, 475 U.S. 469, at 479–80. Consequently, "local governments can never be liable under § 1983 for the acts of those whom the local government has no authority to control." *Id.* 1292. Any action taken by judges in Glynn County with respect to bail determinations do not implicate a Glynn County policy. *See, e.g., Moore v. Cherokee County, Ga.*, No. 1:08-cv-03669–TCB, 2009 WL 2461724, at 3–4 (finding a juvenile court judge is a state official and does not act as the County's final policymaker); *McMillian v. Monroe County*, 520 U.S. 781, 784–785 (1997) (A circuit court judge acts exclusively for the State rather than the County when conducting judicial proceedings. *See also Wall v. Wall*, No. 2:09-cv-527–MEF, 2009 WL 3110208, at 3 (M.D. Ala. 2009); *Eggar v. City of Livingston*, 40 F.3d 312, 316 (9th Cir.1994) (holding that judge's failure to inform indigent defendants of their right to counsel did not amount to municipal policymaking); *Woods v. City of Michigan City*, 940 F.2d 275, 279 (7th Cir.1991) (holding that judge was acting as part of state judicial system but not as an official policymaker); *Carbalan v. Vaughn*, 760 F.2d 662, 665 (5th Cir.1985) (finding city not liable for judge's error merely because he is a judge); *Rodriguez v. City*

*of New York*, No. 02-cv-8203, 2004 WL 444089, at at 4 (S.D.N.Y. Mar. 10, 2004) (finding that the holding of other circuits "that municipal judges do not act as policymakers and therefore a municipality cannot be liable under *Monell* for a [§] 1983 claim based solely on the actions of its judges ... is sound and persuasive").

### 2) Sheriff Jump

Although the Georgia Constitution refers to sheriffs as "county officials," *Ga. Const.*, Art. IX, § 1, ¶ 3(a), federal case law has found this to be "a geographic label", and noted that a sheriff is functionally a state official. *See Manders v. Lee*, 338 F.3d 1304, 1312 (11th Cir.2003); *see also Grech v. Clayton County, Georgia*, *supra*. Sheriff Jump, functioning as a state official, has no policy-making authority over bail determinations for those unable to meet the bail schedule due to financial considerations.

Georgia law provides that "any sheriff . . . whose duty it is to receive persons charged with or guilty of an indictable offense who refuses to receive and take charge of such a person shall . . . be guilty of a misdemeanor. . ." O.C.G.A. § 42–4–12. Pursuant to this statute, a sheriff has an absolute duty to accept for detention persons charged with an indictable offense. *See Tate v. National Surety Corp.*, 58 Ga.App. 874, 200 S.E. 314, 315 (1938). Here, Plaintiffs were charged with criminal trespass, which is an indictable offense.[2]  Georgia law further prohibits any sheriff from releasing a prisoner from his custody prior to the lawful completion of his sentence. O.C.G.A. § 42–4–4(b).

---

[2]"Under Georgia law, all crimes, including misdemeanors, may be charged by indictment. *See* O.C.G.A. §§ 17-7-70 and 17-7-71. *See also Byrne v. Nezhat*, 2001, 261 F.3d 1075, 1113 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011)(noting that, in Georgia, "all crimes, including misdemeanors, may be charged by indictment"); *Banks v. Georgia*, No. 1:11-cv-2135-TCB-AJB, 2011 WL 13135964 (N.D. Ga. Dec. 20, 2011)("Superior Court of Newton County, Georgia issued an indictment charging Petitioner with . . . criminal trespass (a misdemeanor)").

Failure to abide by this requirement may result in a fine for contempt or removal from office. O.C.G.A. § 42–4–4(c).

The Fifth Circuit in *ODonnell II*, *supra*, rejected the notion that a sheriff had policy-making authority over bail determinations for arrestees unable to pay a monetary bail.  In *ODonnell II*, the Fifth Circuit held that the Sheriff was "not an appropriate party" in the action and could not be sued under § 1983. *Id.* at 537.  The Court recognized that Texas law "does not authorize the County Sheriff to avoid executing judicial orders imposing secured bail by unilaterally declaring them unconstitutional." *Id.* Similarly, Georgia law does not authorize sheriffs to make these determinations.

> **D.**      ***Plaintiffs are not entitled to injunctive relief because the current bail policy for arrestees charged with misdemeanor offenses is constitutional and the additional procedural safeguards demanded by Plaintiffs are not constitutionally required.***

The current bail policy and practices applied to arrestees charged with misdemeanor offenses require an individual determination of an arrestee's indigent status and financial circumstances, and mandates that no arrestee be held because they are financially unable to pay a monetary bond.[3]  The evaluation of the financial ability to pay a monetary bond is timely made. The SBO requires that such a determination be made at an initial appearance to be held within 48 hours of any warrantless arrest and within 72 hours of any arrest pursuant to a warrant.  In practice, however, the determination of indigent status and ability to pay a monetary bail – and consideration of non-monetary bail options – is made with 48 hours.  This policy and practice fully satisfies constitutional requirements.

---

[3]Of course, prior to the enactment of the SBO, individual determinations of Plaintiffs Mock and Ogden's financial circumstances and ability to pay a monetary bail were made and both were released on their own recognizance well within 72 hours.

Additional procedural safeguards – like requiring counsel be present at "release hearings" – are not constitutionally required.

Within the last month, the district court in *Edwards v. Cofield*, No. 3:17–cv–321-WKW, 2018 WL 1413384 (M.D. Ala. March 21, 2018), addressed the exact constitutional issues presented in this case. *Edwards* was brought by the same ACLU attorneys of record in this case. The class-action suit arose from the pretrial detention without a hearing of an arrestee due to her inability to pay a monetary bond. After suit was filed, the defendants developed and adopted a bail procedure in the form of a new standing bond order.  The new bond order provided that arrestees who were unable to post bond in the amount set according to a bond schedule, "shall be entitled to a judicial determination of the conditions of their release promptly after arrest, but in any event no later than 72 hours after arrest." *Id.* at 2. The bond order required that arrestees "complete an affidavit of substantial hardship" – the same form used to obtain appointed counsel – prior to the hearing. The bond order allowed consideration of "the defendant's financial condition" as required by Rule 7.2(a) of the Alabama Rules of Criminal Procedure.[4] *Id.* The bond order also required courts to "consider a defendant's ability to post a bond in determining the defendant's conditions of release" and "the defendant's affidavit of substantial hardship." *Id.* The bond order in *Edwards* further mandated the release of any arrestee on an unsecured bond who was not provided a hearing within 72 hours of arrest. *Id.*

The plaintiff in *Edwards* was not satisfied with the implementation of the new bond order and argued that it still ran afoul of the Due Process and Equal Protection Clauses of the Fourteenth

---

[4]At the time of suit, unlike Georgia's bond statute, Alabama law listed the arrestee's "financial condition" as a consideration for bond determinations.  Georgia law will soon follow suit with the enactment of SB 407.

13

Amendment. The plaintiff claimed that "a window of no longer than a few hours" for determinations of financial and criminological issues in the bond determination was constitutionally required. *Id.* at 3. In addition, the plaintiff argued for additional procedural safeguards, "including court-appointed counsel; an opportunity to testify, present evidence, and cross-examine witnesses; notice of the purpose of the bond hearing; and a clear-and-convincing evidentiary standard." *Id.* The district court disagreed, and denied the plaintiff's request for a preliminary injunction. The court held that the bond order met the constitutional requirements of the Fourteenth Amendment and that the additional procedural safeguards requested by the plaintiff were not constitutionally required. The same result should be reached in this case.

As in *Edwards*, Plaintiffs in this case rely heavily on *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). In fact, a heading in Plaintiffs' brief in support of their preliminary-injunction request proclaims that Glynn County's pretrial detention "scheme" fails under *Salerno*. (Dkt. No. 5, p.9). In *Salerno*, the U.S. Supreme Court rejected facial constitutional challenges to the Bail Reform Act of 1984, 18 U.S.C. §§ 3141 to 3150. It was argued in *Edwards,* just as in this case, that *Salerno* established that certain procedural safeguards in the Bail Reform Act were constitutionally required for *any* pretrial detention hearing, including state-court bond determinations in misdemeanor arrest cases. The court in *Edwards* was decidedly unimpressed with this interpretation of *Salerno*:

> Plaintiff suggests that the *Salerno* Court held that those procedural protections are required for any pretrial detention hearing. But the court did no such thing . . . Indeed, the Court easily rejected the constitutional challenge to those procedural safeguards in a three-paragraph discussion that indicates that those procedures go beyond what the Constitution actually requires.

*Id.* at 6. (*Citation and punctuation omitted*.).

> Contrary to Plaintiff's representations, the Court did not hold that those procedures 'must attend' a pretrial detention hearing order to satisfy due process.

*Id.* The court in *Edwards* criticized the plaintiff for "selectively quot[ing]" and "misreading" *Salerno*.

> She also selectively quotes phrases from *Salerno* out of context and mischaracterizes Defendants' arguments in response to her motion for preliminary injunction, two less-than-persuasive tactics.

*Id.* at 9. (*Citation and punctuation omitted*.).

Plaintiffs also rely on *Walker v. City of Calhoun*, *supra*, 2017 WL 2794064, which is presently on appeal before the Eleventh Circuit. In *Walker*, the district court found unconstitutional the practice of detaining individuals in jail *solely* because they cannot meet a monetary bail schedule. The plaintiff in *Walker* was arrested on September 3, 2015 and was actually detained without release, due to his financial circumstances, for over a month. *See Walker v. City of Calhoun*, Civil No. 15-170, 2016 WL 361612 at 3 (N.D. Ga. Jan. 28, 2016), *vacated*, 682 Fed.Appx. 721 (11th Cir. 2017). At the time of the plaintiff's arrest, hearings addressing bond determinations were held only on a weekly basis. *Id.*

After a remand of the case from the Eleventh Circuit, the district court entered an injunction in favor of the plaintiff requiring that specific procedural steps be taken to ensure that arrestees charged with a misdemeanor or an ordinance violation, who are otherwise eligible for release, not be detained because they are unable because of poverty to pay a monetary bail. *Walker v. City of Calhoun*, 2017 WL 2794064, at 4-5. The court mandated that such arrestees be provided an affidavit to swear to their financial circumstances, including assets, liabilities, and the amount an arrestee "would be able to post or pay up front, from any source, including contributions from family and

15

friends." *Id.* at 4. The court further required that the federal poverty guidelines be considered when making an evaluation of indigency for bail-determination purposes. *Id.* The court required that any arrestee eligible for release who was deemed to be indigent from the sworn affidavit, be released on his or her own recognizance or on an unsecured bond.  *Id.*  This is the exact framework and procedure for determining indigency that has been adopted and implemented in Glynn County through the newly-enacted SBO.

The only distinction between what the court in *Walker* required and what is presently the practice in Glynn County concerns the timing of the indigency determination.  The court in *Walker* held that the financial affidavit must be considered "within twenty-four hours after arrest to determine whether the arrestee meets the indigency requirement . . ." *Id.* at 5. After adoption and implementation of the SBO, the practice in Glynn County is that the indigency determination is made within 48 hours. *Ex. E.*  In reversing the district court in *Walker* in the initial appeal in that case, the Eleventh Circuit passed on the question of whether the Constitution requires that indigency status for bail determinations in misdemeanor arrest cases be made well before a probable cause hearing is required.  *Walker v. City of Calhoun*, 682 Fed.Appx. 721, 725, n.1 (11th Cir. 2017)("Because we do not reach the merits of the preliminary injunction order, we need not decide whether the new 48-hour period affects Mr. Walker's claims."). That question will soon firmly be answered by the Eleventh Circuit in the most recent appeal in that case.  In all likelihood, the Eleventh Circuit will find that the 48-hour policy for evaluating the indigency status of arrestees charged with misdemeanor offenses is perfectly constitutional.

There is no absolute right to bail under the Constitution. *See United States v. Salerno*, 481 U.S. 739, 752–53 (1987); *United States v. Acevedo–Ramos*, 755 F.2d 203, 206 (1st Cir.1985)

16

(Breyer, J.). The Eighth Amendment prohibits "excessive bail," *U.S. Const. amend. VIII*, but the Constitution "says nothing about whether bail shall be available at all," *Salerno*, 481 U.S. at 752, or about the timing of bail determinations. Nevertheless, because the bail process implicates a "vital liberty interest" under the Fourteenth Amendment, the Supreme Court has said that it must comport with due process requirements. *United States v. Montalvo–Murillo*, 495 U.S. 711, 716, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (citing *Salerno*, 481 U.S. at 739). And while not necessarily suggesting that due process requires it, the Supreme Court has said that the bail determination needs to be made promptly. *See id.* ("A prompt hearing is necessary....").

The *McLaughlin* 48-hour limitation arose from the Supreme Court's analysis of *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), in which the Court held unconstitutional Florida procedures under which persons arrested without a warrant could remain in police custody for 30 days or more without a judicial determination of probable cause.   In fact, in *McLaughlin*, the Court envisioned combining bail hearings with probable cause hearings within the 48-hour time frame. *See McLaughlin*, 500 U.S. at 54. As to the timing of probable cause hearings, *McLaughlin* recognized that "a 'practical compromise' between the rights of individuals and the realities of law enforcement" were at play and that "probable cause determinations must be prompt—not immediate." *Id.* at 53-54.

In analyzing what is "prompt" under *Gerstein*, the *McLaughlin* Court held that a jurisdiction that "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein*." *Id.* at 57.   In the Supreme Court's view, "a reasonable postponement of a probable cause determination while the police cope with the everyday problems of processing suspects through an overly burdened criminal justice system" is

17

permissible. *Id.* at 55.  In *McLaughlin*, the Supreme Court gave "proper deference to the demands of federalism," recognizing that "'state systems of criminal procedure vary wildly' in the nature and number of pretrial procedures they provide, and [] there is no single 'preferred' approach."  *Id.* at 56 (*quoting Gerstein*, 420 U.S. at 123).  "The Constitution does not impose on the states a rigid procedural framework.  Rather, individual States may choose to comply in different ways."  *Id.* at 53.

At least one district court in Georgia has concluded that a prompt bail-determination hearing is tied to the time period for an arrestee being brought before a judicial officer for a "commitment hearing."  In *Bunyon v. Burke County*, 285 F.Supp 2d, 1310, 1327 (S.D. Ga. 2003), the plaintiff was arrested pursuant to a warrant, was detained for twelve days without being brought before a judge, and was denied an opportunity to post bail. The court concluded that "Georgia's statutes create a liberty interest, protectable by the Due Process Clause of the United States Constitution, in (1) being brought before a judge in 72 hours and in (2) being allowed to post bail on a misdemeanor charge." *Bunyon*, 285 F.Supp.2d at 1323.  The court concluded that the arresting officer violated the plaintiff's due process rights by failing to take him before a judicial officer as required under Georgia law, even if the plaintiff was told the amount of his fine but nonetheless decided not to pay it. The relevant Georgia statute creating this due process right, O.C.G.A. § 17-4-26, requires that a person arrested pursuant to a warrant be brought before a judicial officer within 72 hours after the arrest "to examine, commit, or receive bail."[5]

---

[5] The Supreme Court of Georgia has interpreted this procedural requirement narrowly. *See Pennaman v. Walton*, 220 Ga. 295, 297 (1964) (because OCGA § 17-4-26 "imposes no penalty if the arresting officer fails to take the accused before a committing officer within 72 hours, nor is there any provision that the offender is to be released if no committal hearing was held within 72 hours," an arrestee deprived of a timely first appearance was not entitled to

Although the Supreme Court has not imposed a specific time limit in which the government must conduct a bail hearing, lower courts have used as a guide the 48-hour limitation applicable to warrantless arrests enunciated in *County of Riverside v. McLaughlin*, 500 U.S. 44, 111 S.Ct. 166, 114 L.Ed.2d 49 (1991). *See, e.g.,Collins v. Ainsworth*, 382 F.3d 529, 545 (5th Cir. 2004) (rejecting due process challenge to state's 48–hour window for bail hearings and confirming that "[t]here is no right to post bail within 24 hours of arrest"); *Holder v. Town of Newton*, No. 08-cv-197-JL, 2010 WL 432357, at 11 (Feb. 3, 2010) ("the clear import of *McLaughlin* … is that a bail hearing held within 48 hours of a warrantless arrest is presumptively constitutional—if indeed the Constitution speaks to that issue.").  In fact, the Fifth Circuit recently rejected the notion that an evaluation of indigency for bail-determination purposes must be made in 24 hours. *See ODonnell II, supra,* 882 F.3d 528 (holding that "the district court's 24–hour requirement is too strict under federal constitutional standards" and concluding "that the federal due process right entitles detainees to a hearing within 48 hours").  As indicated above, another recent decision has held that a bond hearing within 72 hours is constitutional*. See Edwards v. Cofield*, *supra* 2018 WL 1413384 at 11 ("Plaintiff has not shown a substantial likelihood of success on the merits of her claim that a maximum delay of seventy-two hours before a bond hearing is unconstitutional"). The Eleventh Circuit will likely adopt this same reasoning and precedent and reverse the 24-hour rule imposed by the district court in *Walker*.

*Walker* created a 24-hour time frame without any explanation as to why bail determinations

immediate release); *Tidwell v. Paxton*, 282 Ga. 641 (2007)(statute requiring that arrestee be brought before committing judicial officer within 72 hours of arrest does not require commitment hearing within 72 hours of arrest); *Capestany v. State,* 289 Ga.App. 47 (2007)(even though OCGA § 17-6-1(d) requires the superior court to act on a bail motion within ten days of receiving a petition for bail, arrestee who does not receive hearing within this time frame is not entitled to be released on own recognizance as statute "does not provide this or any other remedy for the failure to conduct a timely hearing").

for misdemeanor arrestees unable to meet a set bail schedule must be performed well prior to the time of the initial appearance required by O.C.G.A. §§ 17-4-26 and 17-4-62.  This arbitrary time frame enunciated in *Walker* runs counter to the flexible 48-hour approach dictated in *McLaughlin* for probable cause hearings.  Moreover, *McLaughlin* contemplated creating an adequate window that would permit probable cause hearings to be combined with bail-determination hearings, strongly suggesting that a bail-determination hearing is not constitutionally required to be performed prior to a probable cause hearing.

> Plainly, if a probable cause hearing is constitutionally compelled the moment a suspect is finished being 'booked,' there is no room whatsoever for 'flexibility and experimentation by the States.' Incorporating probable cause determinations 'into the procedure for setting bail or fixing other conditions of pretrial release"—which *Gerstein* explicitly contemplated, *id.*, at 124, 95 S.Ct., at 868—would be impossible.

*McLaughlin*, at 54. The Eleventh Circuit in *Walker* will almost assuredly side with the United States Supreme Court in *McLaughlin* and the Fifth Circuit in *ODonnell II* and reverse the district court's decision that a bail-determination hearing for misdemeanor arrestees unable to pay a set bond amount must be held well prior to a probable cause hearing.

The SBO in Glynn County provides for an individualized determination of indigency before an impartial judicial official within 48 hours after any arrest without a warrant and within 72 hours of any arrest pursuant to a warrant. This conforms to the initial appearance requirements under Georgia law for arrestees.  *See* O.C.G.A. §§ 17-4-26 and 17-4-62.   In practice, all misdemeanor arrestees in Glynn County who claim a financial inability to post bail are provided a bail-determination hearing within 48 hours.  If any such arrestees are deemed indigent or financially unable to pay a monetary bail, they are released on recognizance or on an unsecured bond.  This

system satisfies the requirement that "meaningful consideration of other possible alternatives"[6] be provided for misdemeanor arrestees unable to post a monetary bail. Moreover, with the exception of the decision in *Walker* which is now on appeal, it is absolutely consistent with the constitutional requirements for the timing of such a determination, as recognized in the numerous cases discussed above.

### E. Plaintiffs' request for injunctive relief cannot be granted because it does not with sufficient specificity delineate the acts it seeks to restrain or require.

All preliminary injunction orders must comport with Federal Rule of Civil Procedure 65. So, every order granting an injunction must "(A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." *Fed. R. Civ. P. 65(d)(1).* Rule 65's specificity requirements serve important purposes. *See Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996) (explaining that Rule 65 protects "those who are enjoined by informing them of . . . exactly what conduct is proscribed" and ensures "informed and intelligent appellate review") (*citations and internal quotation marks omitted*). Because an injunction carries the possibility of contempt, case law demands that an injunction contain "an operative command capable of enforcement." *Walker v. City of Calhoun, GA*, 682 Fed.Appx. 721, 724 (11th Cir. 2017).

In this case, Plaintiffs generally request that this Court enjoin Defendants Glynn County and Sheriff Jump from jailing "members of the proposed Bail Class without an individualized hearing with procedural safeguards, including counsel an inquiry into and findings concerning their ability to pay, and a finding on the record that detention is necessary to achieve public safety and/or court

---

[6] *See Pugh v. Rainwater*, 572 F.2d 1053, 1057 (5th Cir.1978).

appearance." *Dkt. No. 5, at 21.* Plaintiffs do not specify when the individual hearing is to occur, what method should be utilized to determine the ability to pay a bond, or what type of alternative to a monetary bond is required. Indeed, Plaintiffs are simply requesting that this Court direct Defendants Glynn County and Sheriff Jump - neither of which is a policy-making authority - to generally employ constitutional procedural safeguards relating to bail determinations. This same type of injunction was entered in *Walker v. City of Calhoun*, Civil No. 15-170, 2016 WL 361612 (N.D. Ga. Jan. 28, 2016), only to be vacated by the Eleventh Circuit. *See Walker v. City of Calhoun*, 682 Fed.Appx. 721 (11th Cir. 2017).

In *Walker*, the district court ordered that the City of Calhoun adopt similar unspecified procedural safeguards and post-arrest procedures. The court ordered the City to:

> implement post-arrest procedures that comply with the Constitution, and ... that, unless and until [the City] implements lawful post-arrest procedures, [the City] must release any other misdemeanor arrestees in its custody, or who come into its custody, on their own recognizance or on an unsecured bond in a manner otherwise consistent with state and federal law and with standard booking procedures. [The City] may not continue to keep arrestees in its custody for any amount of time solely because the arrestees cannot afford a secured monetary bond.

*Id.* at 724. The Eleventh Circuit held that this order violated Rule 65. First, the Eleventh Circuit recognized that requiring the City to "comply with the Constitution" is the archetypical and unenforceable "obey the law" injunction. *Id.* Second, the Eleventh Circuit noted that the order was not capable of enforcement or review as it required the City to fashion constitutionally compliant post-arrest procedures, yet offered no guidance on the minimal standards required by the Constitution. *Id.* at 725. Here, Plaintiffs' vague request for "an individualized hearing with procedural safeguards" gives this Court no guidance as to what is specifically being demanded on the relevant constitutional issues - *i.e.,* the timing of any hearing and the substance of any indigency

review for bail determinations. Even if the current bail policy for arrestees charged with misdemeanor offenses was constitutionally infirm in some way - which it is not - Plaintiffs have not made a request for an injunction that would satisfy the specificity requirements of Rule 65.

## III. Conclusion

Plaintiffs' request for a preliminary injunction should be denied. First, Glynn County and Sheriff Jump do not have policy-making authority over misdemeanor bail determinations for indigents and, thus, cannot be directed to take any action on this subject. Second, even if Plaintiffs had sought an injunction against the appropriate policy-making authority, no injunction could be granted as the necessary showings required for an injunction cannot be met. The Plaintiffs are not likely to succeed on the merits in this case. The current bail policy provides a timely, meaningful, and individualized determination of indigency for bail-determination purposes and no further procedural safeguards are constitutionally required. Thus, neither Plaintiffs nor any potential member of the Bail Class are likely to suffer irreparable harm in the absence of relief. Accordingly, the balance of equities tips heavily in his favor of Defendants since no constitutional deprivation has occurred or will occur for any Plaintiff or potential member of the Bail Class. Moreover, an injunction is not in the public interest given the constitutionality of the current bail policy, which provides for release of arrestees on non-monetary bail for those who are unable to post a bond pursuant to the bail schedule. Third, Plaintiffs' request for an injunction necessarily fails since it neglects to identify with required specificity the acts it seeks to restrain or require.

Respectfully submitted, this twenty-third day of April, 2018.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia State Bar Number: 687830

/s/ Bradley J. Watkins
Bradley J. Watkins
Georgia State Bar Number: 740299

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com
bwatkins@brbcsw.com

ATTORNEYS FOR DEFENDANTS

Aaron W. Mumford
Georgia Bar No. 529370
701 G. Street, 2ND Floor
Brunswick, GA 31520
(912) 554-7597

ATTORNEY FOR GLYNN COUNTY, GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARGERY FREIDA MOCK and ERIC SCOTT OGDEN, JR., individually and on behalf of others similarly situated, | * <br> * <br> * <br> * |
| Plaintiffs | * <br> * |
| v. | * Case Number: 2:18-cv-25 <br> * |
| GLYNN COUNTY, GEORGIA; E. NEAL JUMP, Glynn County Sheriff; ALEX ATWOOD, Glynn County Chief Magistrate Judge; and B. REID ZEH III, Glynn County Misdemeanor Public Defender, | * <br> * <br> * <br> * <br> * <br> * |
| Defendants | * |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this twenty-third day of April, 2018.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia Bar Number: 687830
Attorney for Defendants Glynn County,
Georgia, Jump and Atwood

25