# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
### BRUNSWICK DIVISION

| | |
|---|---|
| Margery Frieda Mock and Eric Scott Ogden, Jr., *individually and on behalf of those similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> Glynn County, Georgia; E. Neal Jump, Glynn County Sheriff; Alex Atwood, Glynn County Magistrate Judge; and B. Reid Zeh, III, Glynn County Misdemeanor Public Defender; <br> Defendants. | Case No. 2:18-cv-0025-LGW-RSB <br><br><br> (Class Action) |

## PLAINTIFFS' SURREPLY IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Having notified the Clerk of Court of their intent to file, Plaintiffs submit this surreply to address new arguments raised for the first time in Defendants' reply brief in support of their Motion to Dismiss. Dkt. 55. *See Podger v. Gulfstream Aerospace Corp.*, 212 F.R.D. 609 (S.D. Ga. 2003) (authorizing the filing of surreply briefs without seeking leave of Court pursuant to Local Civil Rule 7.6).

### ARGUMENT

A party may not raise evidence and arguments for the first time in a reply brief. *Bauknight v. Monroe Cty.*, 446 F.3d 1327, 1330 n.2 (11th Cir. 2006). *See Ward v. Glynn Cty. Bd. of Comm'rs*, No. CV 215-077, 2016 WL 4269041 (S.D. Ga. Aug. 11, 2016). Failure to present arguments in the initial brief is "determinative," as new issues raised in the reply brief are deemed waived and will not be considered by a reviewing court. *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1342 (11th Cir. 2005). *See Millwood-Jones v. Holder*, No. CV 214-035, 2016 WL 1189494 at *8 n.5

(S.D. Ga. Mar. 22, 2016). Here, Defendants did not identify as new the evidence and arguments they now proffer in their reply and failed to seek leave of the Court to do so. In their reply brief in support of their Motion to Dismiss, Defendants allege for the first time new grounds for Judge Atwood's immunity from suit, new claims disputing Zeh's liability, and new arguments attempting to strip Jump and Zeh of their policymaking authority. As such, Plaintiffs respectfully request that this Court decline to consider Defendants' newly raised arguments, which, in any event, are meritless.

## I. DEFENDANTS' NEW ARGUMENTS DISPUTING JUDGE ATWOOD'S LIABILITY UNDER A § 1983 ACTION FAIL BECAUSE THEY DO NOT ADDRESS HIS ROLE IN AUTHORING THE BAIL SCHEDULE.

In Defendants' initial Memorandum in Support of their Motion to Dismiss, Defendants described Judge Atwood's role in the Glynn County misdemeanor bail system as "involvement with authoring a bail schedule" and recognized his responsibility in the "establishment of a bail schedule." Dkt. 46-1 at 27. But in Defendants' reply brief, they argue for the first time that Judge Atwood is entitled to judicial immunity specifically because of his role in setting, granting, or denying bail, ignoring Plaintiffs' central allegation that Judge Atwood is liable for authoring the schedule. Dkt. 55 at 13–14. Defendants then rely on this new and different characterization to support an argument necessary to their claim of judicial immunity: that Judge Atwood is acting in a judicial capacity, rather than an administrative one.

Notwithstanding Defendants' belated effort to recast Judge Atwood's role, Plaintiffs do not challenge Judge Atwood's setting of bail in individual cases. Rather, Plaintiffs' Complaint challenges, as Defendants rightfully describe in their initial brief, Judge Atwood's involvement in authoring and enforcing the bail schedule as an administrative policy that necessarily denies individualized determinations. Dkt. 1 ¶¶ 9, 10, 16, 21, 73.

Defendants rely on three federal district court opinions to argue that the setting, granting, or denial of bail is a judicial function for which judges are fully protected by judicial immunity. As Plaintiffs do not challenge Judge Atwood for performing these functions, these cases are irrelevant because they all involve judges who affirmatively *set or deny bail*. *See Barney v. Escambia Cty.*, No. 3:17-cv-3-MCR-CJK, 2017 WL 3699757 (N.D. Fla. Aug. 7, 2017) (finding the judicial action at issue was in the individualized setting of bail for an arrestee accused of a domestic violence offense); *Anel Mancero-Ramirez v. City of Hoover*, No. 05-BE-2618-S, 2006 WL 8436599 (N.D. Ala. May 15, 2016) (finding the acts of granting bail, denying bail, and issuing no-bond orders in individual cases were "normal judicial functions for an Alabama district court judge" presiding over felony cases); *Jackson v. Mizzola*, No. 5:07-CV-156, 2007 WL 2212669 (M.D. Ga. July 30, 2007) (finding judicial immunity where the challenged conduct was a judge's refusal to set bond in a given case, and then later set bond at $100,000, an amount alleged to be excessive). Defendants' attempt to distinguish *McCullough v. City of Montgomery*, No. 2:15-cv-463-RCL, 2017 WL 956362 (M.D. Ala. March 10, 2017) is similarly flawed, as *McCullough* dealt with a judge who "create[d] a series of policies," Dkt. 55 at 13, which is precisely what Plaintiffs allege in their Complaint with respect to Judge Atwood: he sets policy via authoring and enforcing a bail schedule, Dkt. 1 ¶ 9.

Accordingly, this Court should reject Defendants' new, improper, and irrelevant mischaracterization of what Plaintiffs challenge regarding Judge Atwood's actions.

## II. DEFENDANTS' NEW ARGUMENTS DISPUTING REID ZEH'S LIABILITY UNDER A § 1983 ACTION ARE WITHOUT MERIT.

Defendants' initial brief put forth only two arguments regarding Zeh's liability – either he is not a state actor and therefore not liable under § 1983, or he is a state actor, but entitled to Eleventh Amendment immunity. Dkt. 46-1 at 30–31. This framing of Zeh's liability arguments

left little room for any discussion regarding his qualified immunity defense, as Defendants chose only to remark in a footnote that Zeh is immune "for the same reasons as defendants Jump and Atwood, *i.e.*, the lack of clarity of this area of the law." Dkt. 46-1 n.11. Now, in their reply brief, Defendants introduce for the first time two new arguments to support their motion to dismiss, claiming that Plaintiffs 1) fail to allege a constitutional violation with the requisite factual specificity, and 2) have not shown a causal connection between the alleged constitutional violation and Zeh's actions. Dkt. 55 at 21.

Defendants' arguments that Plaintiffs' § 1983 claims against Zeh are deficient are not just new, they are wrong. Defendants' reply brief mischaracterizes the allegations in Plaintiffs' Complaint to assert that Zeh's unconstitutional conduct relates *exclusively* to his failure to appear at bond hearings. To be clear, Zeh *is* required to appear at bond hearings, as counsel must be provided within a reasonable time to provide representation at any critical stage, *Rothgery v. Gillespie Cty.*, 554 U.S. 191, 212 (2008), and bond hearings in Glynn County are a critical stage. "A critical stage is one that holds significant consequences for the accused." *U.S. v. Roy*, 855 F.3d 1133, 1238 (11th Cir. 2017) (citing *Bell v. Cone*, 535 U.S. 685, 696 (2002)). To determine whether a stage in the proceedings meets this definition, the Court must "analyze whether potential substantial prejudice to [a] defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice." *Id.* (citing *U.S. v. Wade*, 388 U.S. 218, 227 (1967)).

A critical stage includes "proceedings between an individual and agents of the State (whether formal or informal, in court or out) that amount to trial-like confrontations, at which counsel would help the accused in coping with legal problems or . . . meeting his adversary." *Roy.* 855 F.3d at 1238 (internal quotations omitted). Bond hearings in Glynn County are such a proceeding, the results of which could seal an arrestee's fate, *e.g.*, keeping her in jail and extracting

a plea under duress, rendering trial and plea bargains a "mere formality." *See U.S. v. Wade*, 388 U.S. 218, 224 (1967). Thus, had Plaintiffs only challenged Zeh's failure to appear at bond hearings, this, alone, would have sufficiently established Zeh's liability, but Plaintiffs' allegations against Zeh do not end here, as Defendants suggest. Defendants then attempt to use this mischaracterization of Plaintiffs' claims to justify a new argument they failed to make in their initial brief – that Plaintiffs' claims against Zeh "fail for a lack of factual specificity as to the alleged constitutional violation." Dkt. 55 n. 5.

Plaintiffs' Complaint is clear. Zeh's administrative practices cause significant delays in appointment that effectively leave misdemeanor arrestees without counsel, not just *in court* at critical stage bond determination hearings, but before and afterward, in violation of the Sixth and Fourteenth Amendments. Dkt. 1 ¶¶ 90–94. Thus, even if this Court were to conclude that bond hearings at which indigent misdemeanor arrestees have their liberty evaluated is *not* a critical stage, Zeh's appointment practices still run afoul of the Sixth and Fourteenth Amendment because he does not seek appointment "within a reasonable time to provide representation" at any subsequent critical stage. *Rothgery*, 554 U.S. at 212. As the Complaint alleges, under Zeh's current practices, indigent people accused of misdemeanors are not regularly screened for eligibility upon arrest, and should they request counsel prior to their first court appearance, Zeh's follow-up is so inconsistent that he may never learn of the request. Dkt. 1 ¶¶ 42-44. Once a request is made, it is not clear when or how, if ever, Zeh confirms representation or enters an appearance. Dkt. 1 ¶ 43. These unconstitutional administrative actions deny indigent arrestees the aid of counsel, if not altogether, at least until their guilty plea, when the opportunity to meaningfully argue for their release, investigate claims or defenses, or engage in negotiations regarding resolution have all passed. Dkt.

1 ¶¶ 45–46. This, in and of itself, presents an actionable constitutional injury directly caused by Zeh's inaction.

In light of these allegations, which must be accepted as true on this posture, the causal connection is clear. Because of the way in which Zeh manages his administrative responsibilities and pursues appointment, his prospective clients, *i.e.*, members of Plaintiffs' proposed Counsel Class, are deprived of any meaningful opportunity to argue for their pretrial release or to prepare a basic defense.

Plaintiffs Mock and Ogden are good examples of the harms caused by Zeh's unconstitutional actions. Neither Ms. Mock nor Mr. Ogden saw or spoke to Zeh while they waited in jail for a court appearance. Dkt. 1 ¶ 5; Dkt. 1-2 ¶ 17; Dkt. 1-3 ¶¶ 8–9. Neither Zeh nor anyone from his office reached out to Plaintiffs to screen them for an indigency determination or eligibility for representation. *Id.* As such, Plaintiffs had no way to argue through counsel for their pretrial release. Unlike Zeh, a licensed attorney, Plaintiffs did not know how to file motions that might have modified the bond amount automatically assigned at arrest or secured their release sooner than the "rights read" proceeding. By the time Plaintiffs appeared at "rights read," they had still not heard from Zeh and remained unrepresented by counsel. As such, no attorney was present to argue for the least restrictive condition of release, release on recognizance, or address any relevant bond determination factors. Instead, these arguments were not made by anyone, and Plaintiffs were released on an unsecured bond.

Proposed plaintiff Robert Franklin Cox, Jr. is also a prime example of the harms caused by Zeh's unconstitutional actions. Dkt. 56-2. If Plaintiffs' pending Motion for Leave to File a First Amended Complaint is granted, Mr. Cox will join Ms. Mock and Mr. Ogden as plaintiffs in this lawsuit. Dkt. 56. Mr. Cox is a Glynn County resident who has been subjected to the Defendants'

wealth-based detention scheme numerous times. On at least four occasions in the last two years, Mr. Cox was arrested on a misdemeanor charge, incarcerated because he could not afford to pay a predetermined bail amount, and detained indefinitely until pleading guilty—the only option afforded him to get out of jail. During these periods of incarceration, Mr. Cox did not receive the assistance of the only public defender available for his misdemeanor cases, Defendant Zeh.

### III.   DEFENDANTS RAISE NEW ARGUMENTS REGARDING JUMP'S AND ZEH'S FINAL POLICYMAKING AUTHORITY.

Defendants' initial brief was silent regarding Zeh's policymaking authority. Dkt. 46-1 at 30–32. Moreover, Defendants argued that Jump was a *state* policymaker, rather than a *county* policymaker, and in so doing addressed a government function, bail determinations, that Plaintiffs have not raised with respect to Jump. Dkt. 46-1 at 22; Dkt. 41 at 11 ("Sheriff Jump, *functioning as a state official*, has no policymaking authority over bail determinations . . . .) (emphasis added). Plaintiffs' response brief suggested that the dispute regarding Jump's, Atwood's, and Zeh's policymaking deals with state versus county policymaking, not with the actual possession of final policymaking authority. Dkt. 49 at 22 ("Defendants do not dispute that Jump, Atwood, and Zeh are 'final policymakers.' They simply argue that Jump, Atwood, and Zeh make policy for the state rather than Glynn County"). In other words, Defendants may have disagreed with whether their policymaking was attributable to the county or the state, but they never disputed whether Jump, Atwood, and Zeh were policymakers. Now, in the reply brief, Defendants clarify, in selectively quoting Plaintiffs' response brief, that they do, in fact, dispute Jump's and Zeh's policymaking authority. Dkt. 55 at 23.

Defendants' new position that both Jump and Zeh lack any policymaking authority is incorrect. Further, this assertion is based on the mischaracterization that the government function at issue in Plaintiffs' claims against both Jump and Zeh is the determination of monetary bail for

arrestees charged with misdemeanor offenses. It is not. The government function at issue with respect to Jump is his unconstitutional jailing of people prior to trial. Plaintiffs' Complaint alleges that Jump impermissibly jailed Plaintiffs and proposed class members because they could not afford a monetary amount of bail, despite the absence of adequate procedural protections required prior to this deprivation. Dkt. 1 ¶¶ 82–89. Likewise, the allegations against Zeh is not, as Defendants say, related to the determination of a bail amount; rather, Plaintiffs' Complaint challenges Zeh's failure to advocate for indigent misdemeanor arrestees when their pretrial liberty is determined at an initial appearance; his deficient screening process for determining who is eligible for representation; his inconsistent, if not nonexistent, outreach to indigent defendants who qualify for his services but are not yet represented; and his undefined process to confirm representation or enter an appearance as counsel for indigent persons. *See* Dkt. 1 ¶¶ 30, 33, 38, 42–47.

In light of the posture of this motion to dismiss and Defendants' raising arguments for the first time in a reply brief, this Court should reject Defendants' new claims regarding Jump's and Zeh's policymaking authority.

## CONCLUSION

This Court should decline to consider all references in Defendants' reply to their newly-raised arguments regarding Defendants Atwood's and Zeh's qualified immunity and Defendants Jump's and Zeh's policymaking authority which are, in any event, meritless.

Dated: June 27, 2018.                    Respectfully submitted,

/s/ Kosha S. Tucker
Kosha S. Tucker,* Ga. Bar Association No. 214335

Sean J. Young, Ga. Bar Association No. 790399
American Civil Liberties Union of Georgia
PO Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: SYoung@acluga.org
Email: KTucker@acluga.org

*On behalf of Attorneys for Plaintiff*

James A. Yancey, Jr.
Georgia Bar Association No. 779725
Attorney at Law, P.C.
704 G Street
Brunswick, Georgia 31520-6749
Telephone: (912) 265-8562
Email: jayjr@standinthegap.biz

/s/ Andrea Woods
Andrea Woods (lead counsel) *
Twyla Carter *
Brandon J. Buskey **
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 284-7364
Email: awoods@aclu.org
Email: tcarter@aclu.org
Email: bbuskey@aclu.org
*\* Admitted pro hac vice*
*\*\* Admission pro hac vice pending*

**Attorneys for Plaintiff**

**Certificate of Service**

This is to certify that I have this day served counsel for Defendants in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this 27th day of June, 2018.

/s/ Kosha S. Tucker*

Attorney for Plaintiffs Margery Mock and Eric Scott Ogden, Jr.
* *Admitted pro hac vice*