# Exhibit B

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| Margery Frieda Mock and Eric Scott Ogden, Jr., *individually and on behalf of those similarly situated*,<br><br>Plaintiffs,<br><br>v.<br><br>Glynn County, Georgia; E. Neal Jump, Glynn County Sheriff; Alex Atwood, Glynn County Magistrate Judge; and B. Reid Zeh, III, Glynn County Misdemeanor Public Defender;<br><br>Defendants. | Case No. 2:18-cv-0025-LGW-RSB<br><br>(Class Action) |

## DECLARATION OF ROBERT FRANKLIN COX, JR.

I, Robert Franklin Cox, Jr., under penalty of perjury, hereby state as follows:

1. I am a 54 year-old man.

2. I have lived in Glynn County for approximately 8 years.

3. For the past several years, I have struggled with an alcohol abuse disorder. Because of this struggle, I have accrued a significant criminal history and been unable to keep a job. I am currently receiving in-patient treatment at Hudson Hill for my disease.

4. On multiple occasions, I have been arrested and charged with misdemeanors in Glynn County and required the services of the Glynn County State Court public defender, first, I think in 2013.

5. In what I remember being a 2013 case, I was charged with theft by shoplifting. I qualified for a public defender because I had no money. I expected to be asked about getting a public defender. No one asked me. No public defender came to see me. Days later, a jail

1

employee told me that I was going to court in a few hours. When I got to court it looked like an assembly line of people going before the judge to plead guilty. When my turn came, I was told to stand at a desk before the judge. A man stood on my right who I had never met before. No one told me who he was. He told me that it was better if I pleaded guilty. I did what he told me to do. I do not know how this man was appointed. I later learned this man was Reid Zeh.

6. Approximately seven other times the same thing happened. I was arrested. No one told me about a public defender or asked if I needed one. I would meet Mr. Zeh in court and plead guilty, not knowing there were other options and wanting to get out of jail. Mr Zeh never came to see me. I have never heard of Mr. Zeh seeing any public defender clients.

7. In one case after approximately seven arrests, I bonded out with my mother's financial assistance. When I went to my court date in that case, Judge Bart Altman directed me to see the public defender, Mr. Zeh. I went to Mr. Zeh's office right after court. Mr. Zeh indicated that he would charge me an additional $2,500 to represent me as my public defender. For this money, Mr. Zeh said he would take care of my case.

8. I had no money. I told my mother about the fee. My family must have paid Mr. Zeh $2,500 because the charges were later dropped.

9. I do not believe Mr. Zeh would have assisted me in my case had my family not paid him $2,500. If my family had not come up with the $2,500, I believe I would have had to represent myself or hire a private attorney in order to assert my valid defenses in my case.

10. I have been charged with misdemeanors in Glynn County more times than I can remember. My attorneys in this case have refreshed my memory by sharing a handful of my court records, which they obtained via an open records request. Based on reviewing those records, I can describe a few of my cases over the last several months.

11. On June 3, 2016, I was arrested on a misdemeanor charge of theft by taking and booked into the Glynn County Detention Center. I could not afford a pre-set bail amount required for my release. I was taken to a proceeding referred to as "rights read" on June 6, 2016. At the proceeding, a presiding judge asked me a handful of questions, and set my bail. No public defender was there to assist me. I still could not afford to pay the bail amount, and the judge did not ask me what I could afford to pay. I remained incarcerated for a month, until July 9, 2016, when I bonded out via a for-profit bondsman who my mother paid. I was sentenced on that charge on August 10, 2016.

12. On July 22, 2016, I was arrested on a misdemeanor charge of public drunkenness and booked into the Glynn County Detention Center. Once again, I could not afford a pre-set bail amount required for my release. I was taken to a "rights read" proceeding on July 25, 2016, which went in the same manner as the proceeding in June of that year. After "rights read," I still could not afford the bail set in my case, and which was set without asking what I could afford to pay. I remained incarcerated until August 10, 2016, when I pled guilty in order to get out of jail. I also received a 12 months suspended sentence and 90 days jail time with credit time served.

13. On November 9, 2016, I was arrested on a misdemeanor charge of criminal trespass and booked into the Glynn County Detention Center. I could not afford to pay a pre-set bond amount required for my release. I was taken to a "rights read" proceeding on November 11, 2016. I continued to be detained on a bail requirement I could not afford—and which no one asked whether I could pay—until over three months later, February 22, 2017. On February 22, 2017, I was sentenced to 90 days in jail (with credit time served), 100 hours of community service, and a year of probation with a monthly fee of $45.00. I also had to pay a supervision fee of $36.00 per month.

14. On June 24, 2017, I was arrested on misdemeanor charges of criminal trespass and public intoxication. As with my other arrests, because I could not afford the pre-set secured bail requirement set on my release, I remained in jail. I went to a "rights read" hearing on June 26, 2017, and—as with all the others I had been through—no public defender assisted me and no one inquired into my ability to afford bail. I remained incarcerated until proceeding to a guilty plea hearing on July 5, 2017. As was true in every misdemeanor case in which I've been charged, no public defender sought a reduction of my bail amount, but rather only met with me during my sentencing hearing. I was sentenced to 180 days in jail (with credit time served), 100 hours of community service, and a year of probation with a monthly fee of $45.00, as well as 90 hours of AA meetings in 90 days and 3 hours of AA meetings a week for the remained of probation.

15. Since 2015, I have had no income. Throughout the time period of the arrests I've described here, my income put me below the federal poverty limit.

16. I learned about Mr. Zeh from my first experience with Mr. Zeh. No jail employee ever told me about a public defender. I learned that Mr. Zeh would not visit me in jail. I knew that I would see Mr. Zeh when I walked in to court. Mr. Zeh never visited me in jail when I was locked up on pending misdemeanor charge.

17. Mr. Zeh has represented to me that he does not take cases to trial for public defense clients without extra money.

I affirm, under penalty of perjury, that this is true and correct.

Signed,

*Robert Cox*
Robert Cox

6/15/18
Date