# Exhibit D

| | |
|---|---|
| Margery Freida Mock, Eric Scott Ogden, Jr., and Robert Franklin Cox, Jr., *individually and on behalf of others similarly situated*, <br><br> Plaintiffs, <br><br> Barbara R. Hamilton, *individually*, <br><br> Plaintiff, <br><br> v. <br><br> Glynn County, Georgia; E. Neal Jump, Glynn County Sheriff; Bart Altman, Glynn County State Court Judge; Alex Atwood, Glynn County Chief Magistrate Judge; and B. Reid Zeh, III, Glynn County Misdemeanor Public Defender; <br><br> Defendants. | Case No. 2:18-cv-0025-LGW-RSB <br><br> (Class Action) |

### FIRST AMENDED CLASS ACTION COMPLAINT

## I.     PRELIMINARY STATEMENT

1.     Every day, people accused of misdemeanor crimes in Glynn County, Georgia, are treated differently based on how wealthy they are. Those who cannot afford a predetermined monetary bail or to hire a private attorney are jailed indefinitely, while those who can pay go free. This two-tiered pretrial justice system is blatantly unconstitutional.

2.     The perpetrators of this two-tiered pretrial justice system are Defendants Glynn County ("the County"), Sheriff E. Neal Jump ("Jump"), State Court Judge Bart Altman ("Altman"), Magistrate Judge Alex Atwood ("Atwood"), and Attorney B. Reid Zeh, III ("Zeh"). For years, they have required secured financial conditions of release for persons accused of

misdemeanor[1] offenses pursuant to a predetermined bail schedule that specifies a monetary amount based only on the charge. "Secured" bail is a bond that is required upfront as a precondition for release and is distinct from "unsecured" bail, which is only due in the event of a failure to appear for court.[2] A person arrested in Glynn County who can afford to pay the predetermined monetary amount is immediately eligible for release from jail upon payment.[3] Those arrestees who cannot afford their release may remain in jail for weeks, even months, without being afforded any hearing to meaningfully argue for their release.

3. Moreover, persons accused of misdemeanors who cannot afford to pay bail or hire a private attorney are deprived of the opportunity to request an adversarial preliminary hearing to seek their release, either by challenging probable cause for their arrest or requesting lower bail. They are further denied the ability to bring subsequent motions or habeas petitions to modify or reduce bail through counsel. In fact, the only process available in Glynn County for misdemeanor arrestees who cannot afford their monetary bail or to hire private counsel is a hearing to enter a guilty plea and face sentencing.

4. Plaintiff Margery Freida Mock is a recent arrestee who is currently imprisoned because she cannot afford to pay the amount of money automatically set by the bail schedule used in Glynn County. On March 7, 2018, Ms. Mock was arrested on allegations of criminal

---

[1] Glynn County operates the same system, though generally with longer periods of indefinite detention, in the felony context. However, the proposed class in the above-captioned matter is limited to persons accused of misdemeanors.

[2] Georgia law only authorizes the forfeiture of monetary bond in the event of a failure to appear for court; in this way, money bail bears no relation to public safety. Ga. Code Ann. § 17-6-70.

[3] This is not true of misdemeanor arrestees charged under the Georgia Family Violence Act, Ga. Code Ann. § 19-13-1, who must go before a judge before bail is set or posted. Ga. Code Ann. § 17-6-1(b)(2)(B). However, persons accused of family violence misdemeanors also have bail set without a determination of their ability to pay, or a consideration of less restrictive alternate conditions of release. Accordingly, family violence defendants are still incarcerated based solely on their inability to pay a secured bail amount.

trespass.  Her bail was automatically set at $1,256[4] without Ms. Mock ever going before a judge. Plaintiff Eric "Scotty" Ogden, Jr. was arrested on March 7, 2018 on a misdemeanor charge of criminal trespass.   He is currently imprisoned because he cannot afford to pay the $1,256 automatically set by the bail schedule for his charge, criminal trespass.  Plaintiff Robert Franklin Cox, Jr. was arrested on misdemeanor charges on five occasions between June 3, 2016 and May 30, 2018.  Over the course of four of those arrests, Mr. Cox was imprisoned for approximately 171 days solely because he could not afford to pay a secured bail requirement automatically set by a bail schedule.

     5.     Plaintiff Barbara R. Hamilton paid Defendant Zeh $2,500 on April 1, 2015 in connection with a pending misdemeanor case brought against her son, Robert Franklin Cox, Jr., Plaintiff.  Mr. Cox was arraigned on two misdemeanor charges on April 1, 2015 and, upon pleading not guilty, was referred to Defendant Zeh by State Court Judge Bart Altman.  Despite being referred as the public defender, Defendant Zeh indicated that he would charge Mr. Cox $2,500 in order to represent him.  Zeh did not refer Mr. Cox to any other public defender.  On April 1, 2015, Ms. Hamilton paid Zeh the $2,500 fee, not knowing that Zeh was already paid by Glynn County to provide misdemeanor indigent defense services, or that public defense services are provided for indigent persons facing felony charges through the Circuit Public Defender's office.  On April 6, 2015, the solicitor requested that Mr. Cox's case be transferred to Superior Court and on April 6 and April 8, 2015 the motions to transfer were granted.

     ~~5.~~6.    None of these named Plaintiffs Mock, Ogden, or Cox can afford to hire a criminal defense attorney. They are therefore eligible for representation only by Defendant Zeh as public

---

[4] Defendant Attorney Zeh was also recently arrested and required to post $1,256 in bond, which he was able to pay on the same day as his arrest.  *See* Larry Hobbs, *State Public Defender Charged with Simple Assault*, (March 6, 2018), *available at* https://thebrunswicknews.com/news/local_news/county-s-state-public-defender-charged-with-simple-assault/article_dff4da7e-4211-5884-b2b7-8622a2f0434e.html.

defender. However, Plaintiffs Mock and Ogden have never met with Zeh, who has a policy of not visiting public defense clients in the detention center, representing clients at their bail setting proceeding, or requesting a preliminary hearing or bail modification hearings on their behalf. Plaintiff Cox has only met with Zeh during a "guilty plea" hearing to resolve his cases, but never during his pretrial incarceration or first appearance proceedings.

6.7.    On behalf of themselves and all others similarly situated, Plaintiffs seek declaratory relief finding (1) that the two-tiered detention practices administered by Defendants Glynn County, Judge Atwood, and Sheriff Jump violate the Fourteenth Amendment's guarantees of equal protection under the law and due process; (2) that, in detaining misdemeanor arrestees without an individualized, adversarial hearing and requisite factual findings, Defendants Glynn County, Altman, Atwood, and Jump violate the Fourteenth Amendment rights of misdemeanor arrestees to due process; (3) that Defendants Glynn County and Zeh violate indigent misdemeanor arrestees' Sixth Amendment right to the aid of counsel; and (4) that Defendants Glynn County and Zeh violate indigent misdemeanor arrestees' rights to equal protection in the provision of counsel.

8.    Also on behalf of themselves and all others similarly situated, Plaintiffs seek a preliminary and permanent injunction against Defendants Glynn County and Sheriff Jump from continuing to jail arrestees unable to pay secured money bail, unless Plaintiffs receive an individualized hearing with adequate procedural safeguards, including counsel; an inquiry into and findings concerning their ability to pay and the suitability of alternative non-financial conditions of release; and a finding on the record by clear and convincing evidence that any conditions of release are the least restrictive necessary to achieve court appearance, public safety, and the administration of justice.

7.9. Also on behalf of themselves and all others similarly situated, Plaintiffs seek a permanent injunction against Defendants Glynn County, Sheriff Jump, Judge Atwood, and Judge Altman from continuing to jail arrestees unable to pay secured money bail, unless Plaintiffs receive an individualized hearing with adequate procedural safeguards, including counsel; an inquiry into and findings concerning their ability to pay and the suitability of alternative non-financial conditions of release; and a finding on the record by clear and convincing evidence that any conditions of release are the least restrictive necessary to achieve court appearance, public safety, and the administration of justice.

8.10. Plaintiffs Mock and Ogden seek a temporary restraining order on behalf of themselves.

9.11. Plaintiffs seek monetary damages against Glynn County on behalf of themselves. The County is liable to Plaintiffs through the actions of four of its final policymakers: Defendants Sheriff Jump, Judge Atwood, Judge Altman, and Attorney Zeh. Jump oversees the booking and incarceration of misdemeanor arrestees at the Glynn County Detention Center. Atwood setsand Altman set policy via authoring and enforcing the Glynn County bail schedule. And Zeh, the County's contracted misdemeanor public defender, enforces a policy of delaying representation to misdemeanor arrestees until well after their bail has already been set. All four of these County actors violate the constitutional rights of indigent persons arrested for misdemeanors in Glynn County, and the County is responsible for those violations.

10.12. Plaintiffs seek monetary damages on behalf of themselves against each of the named Defendants individually. First, Jump is liable to Plaintiffs for unconstitutionally incarcerating them based on their access to wealth and without adequate due process protections. Second, Altman is liable to Plaintiffs for, in his administrative capacity, authoring and signing

the bail schedule that led to their unconstitutional wealth-based incarceration. Third, Atwood is liable to Plaintiffs for, in his administrative capacity, authoring and enforcing the bail schedule that lead to their unconstitutional wealth-based incarceration. Fourth, Zeh is liable to Plaintiffs for his outreach, screening, and appointment practices leading to systemic delays in representation that violate Plaintiffs' Sixth and Fourteenth Amendment rights.

13.    Finally, Plaintiff Cox seeks punitive damages on behalf of himself against Defendant Zeh, individually. Zeh is liable to Plaintiff Cox for his failure to reach out to, screen, or timely appoint himself to represent Mr. Cox, amounting to a reckless indifference to Mr. Cox's federally protected rights under the Sixth and Fourteenth Amendments.

## II.    JURISDICTION AND VENUE

14.    With respect to the proposed class plaintiffs, this is a civil rights action arising under 42 U.S.C. § 1983 and 28 U.S.C. § 2201, et seq., and the Sixth and Fourteenth Amendments of the United States Constitution. Ms. Hamilton brings state law claims against Defendant Zeh that arise out of the same course of conduct as proposed class plaintiffs Mock, Ogden, and Cox's claims against Zeh. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

15.    Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial district.

## III.    PARTIES

**Plaintiffs**

16.    Plaintiff Margery Freida Mock is a lifelong resident of Glynn County, Georgia. She is 28 years old and currently resides in Brunswick, Georgia, where she is a mother to an 8-year-old daughter. Ms. Mock is currently unemployed is battling homelessness, having spent

one month in a hotel and several nights at her storage unit. All of her belongings were in said storage unit at the time of her arrest, but the deadline for retrieval was March 7, 2018, so Ms. Mock now stands to lose all of her material possessions while incarcerated. Ms. Mock's sole source of income is survival benefits, which puts her below the federal poverty guidelines.

17. Plaintiff Eric "Scotty" Ogden is a lifelong resident of Glynn County, Georgia. He is 30 years old and currently resides in Brunswick, Georgia, where he is a father to three daughters. At present, Mr. Ogden is unemployed, and has been for about five months. During this period of unemployment, Mr. Ogden has had difficulty making ends meet. He has struggled financially and does not have stable housing. Prior to this period of unemployment, however, Mr. Ogden worked for a concrete company for 12 years. At the time of his arrest, Mr. Ogden's pets and possessions were in a storage unit. He has no one to check on or care for his animals and risks losing all of his property due to his wealth-based incarceration. Mr. Ogden's income puts him below the federal poverty guidelines.

18. Plaintiff Robert Franklin Cox, Jr. has been a resident of Glynn County, Georgia, for approximately eight years. He has been without an income since approximately 2015. In the last two years, Mr. Cox has been arrested on misdemeanor charges in Glynn County five times. In four of those instances, Mr. Cox was detained for extended amounts of time because he was unable to pay a secured bail requirement set without inquiry into what he could afford, and without consideration of less restrictive forms of release. All told, Mr. Cox was incarcerated for approximately 171 days due to his inability to pay a secured money bail requirement. As Mr. Cox's criminal record illustrates, he struggles with an alcohol addiction. Based on his history and circumstances, there is a reasonable likelihood that Mr. Cox will again be subjected to

Defendants' misdemeanor post-arrest system.  *See* Cox Decl. ("I have been charged with misdemeanors in Glynn County more times than I can remember.")

19.     Barbara Hamilton is a 78-year-old woman who has lived in Georgia for 55 years. She is the mother of Robert Franklin Cox, Jr., and suffered the loss of $2,500 when she paid Defendant Zeh to represent her son who was referred to Zeh by Judge Bart Altman while he was facing misdemeanor charges. Ms. Hamilton was unaware that Zeh was already paid by Glynn County to take misdemeanor criminal cases for indigent persons, or that a Circuit Public Defender Office was available for indigent persons accused of felonies. She and her family relied on Zeh's representation that this money was necessary for him to provide indigent defense services to Mr. Cox.

**Defendants**

18.20.  Defendant E. Neal Jump is the Sheriff of Glynn County. He is sued in his individual and official capacities.

21.     Defendant Bart Altman is the State Court Judge for Glynn County. Altman authored and signed the current bail schedule in Glynn County.  He is sued in his individual and official capacities.

19.22.  Defendant Alexander Atwood is the Magistrate Judge for the Glynn County District Court presiding over pretrial matters.  Atwood authored and enforces the current bail schedule in Glynn County.  He is sued in his individual and official capacities.

20.23.  Defendant B. Reid Zeh is the Public Defender for misdemeanors in Glynn County.  He is sued in his official and individual capacities.

21.24.  Defendant Glynn County is a municipal corporation and political subdivision of Georgia.  The County employs Defendants Jump, Altman, Atwood, and Zeh, and, through these

officials, maintains policies of (1) incarcerating indigent misdemeanor arrestees in the Glynn County Detention Center pursuant to the bail schedule and (2) delaying the appointment of counsel to pretrial arrestees. Sheriff Jump's administration of the jail and detention of misdemeanor arrestees is a county function because, *inter alia*, Georgia law vests administration of jails under county control, Glynn County pays for the operation of the jail, and pretrial detainees do not fall under the State's Department of Corrections jurisdiction. Altman and Atwood set policy via authoring and enforcing the Glynn County bail schedule, which is a legislative, executive, and administrative county function because each is elected by voters of Glynn County, paid by county funds, and the bail schedule operates as a policy solely in Glynn County. And Zeh's delays in representation cause indigent misdemeanor arrestees to go the duration of their pretrial period without the assistance of counsel to argue for their release or to meaningfully pursue defenses. Zeh acts for Glynn County as he is specifically set apart from the state-funded Circuit Public Defender's Office and paid a flat monthly rate by Glynn County.

## IV. STATEMENT OF FACTS

### A. Indigent Individuals Arrested on Misdemeanor Charges in Glynn County are Funneled Through a Two-Tiered Justice System

#### i. Defendants Unconstitutionally Detain People Unable to Pay Secured Money Bail Set Pursuant to the Predetermined Bail Schedule

~~22.~~25. Approximately one in five residents of Glynn County lives in poverty.[5]

~~23.~~26. Nonetheless, upon an individual's arrest for a misdemeanor charge,[6] Glynn County requires him or her to pay an amount of secured money bail (i.e. an upfront payment of

---

[5] U.S. Census Bureau, *Poverty Status in the Past 12 Months: 2012–2016 American Community Survey 5-Year Estimates*, https://factfinder.census.gov (search "Community Facts" field for "Glynn County, Georgia;" then follow "Poverty" hyperlink; then follow "Poverty Status in the Past 12 Months (Age, Sex, Race, Education, Employment, ...)" hyperlink), attached as Ex. C to Woods Decl.

cash, commercial surety, or property) in order to be released from jail.  The amount of money

that an arrestee must pay is generally pre-determined by a bail schedule based on the charge.  *See*

State Court Bail Amounts, attached as Ex. A to Woods Decl.

24.27.  Defendant Judges Altman and Atwood created the bail schedule and Defendant

Sheriff Jump enforces its upfront money bail requirements in governing release from the Glynn

County Detention Center.

25.28.  In requiring this predetermined money bail, Defendants do not consider an

individual's flight risk or danger to the community, or whether any alternative non-financial

conditions of release may mitigate any relevant risk before requiring the predetermined bail

amount.  Instead, immediate access to money alone determines whether a person remains in jail

following arrest.  If a person can afford to pay the amount required, that person is immediately

released from jail.  If a person is unable to pay, she must remain incarcerated.

26.29.  Defendant Sheriff Jump is responsible for the operation of the Glynn County

Detention Center and the release and detention of arrestees.  As a matter of policy and practice,

Jump keeps arrestees in jail if they cannot pay the monetary amount required by the bail schedule

and immediately releases those who can pay.  Jump maintains this policy and practice even for

arrestees he knows cannot afford the preset bail, and even though he receives no notice that there

has been an inquiry into a person's ability to pay the amount set, findings that the person can

afford to meet the financial conditions of release, or consideration of alternative non-financial

conditions of release.

---

[6] This does not include charges falling under the Georgia Family Violence Act; persons so charged are
subject to even more restrictive bail practices.

27.30.  A person with financial resources will usually be released within an hour or two of paying the bail amount, but the Sheriff's Department will continue to detain a person who cannot afford the preset, secured bail amount.

### ii. Defendants Deprive Indigent Arrestees of Adequate Pretrial Process or Representation, Furthering the Damage of this Bifurcated Justice System

28.31.  Under Georgia law, an arrestee must be taken before a judge or magistrate within 48 hours of a warrantless arrest and 72 hours of an arrest on a warrant.  Ga. Code Ann. §§ 17-4-62, 17-4-26.

29.32.  The purpose of these initial appearances include informing the arrestee of the charges against her; informing the arrestee of the right to remain silent and the right to an attorney; informing the arrestee of the procedures by which to apply for an appointed attorney if necessary; and setting bail where the court is authorized.[7]  *See* Unif. Super. Ct. R. 26.1. Additionally, if taking an arrestee before a judicial officer pursuant to a warrantless arrest, the court must determine whether probable cause is present to justify the arrest and, if so, to issue a warrant.  Ga. Code Ann. § 17-4-62.

30.33.  What occurs in Glynn County does not resemble this process.  The first time an arrestee who is detained on bail she cannot afford goes before a judge is at a first appearance proceeding referred to colloquially in Glynn County as "rights read."  By the time of the "rights read" proceeding, which occurs every Monday, Wednesday, and Friday afternoon in a small courtroom at the Glynn County Detention Center, arrestees may have been incarcerated anywhere from 1–2 days to over a week.

---

[7] The court *must* set bail in misdemeanor cases, but need not in felony cases.  *See* Ga. Code Ann. § 17-6-1(b)(1).  Moreover, in certain enumerated felony cases, bail may only be set by a Superior Court, which may not be presiding over the initial appearance.  Ga. Code Ann. § 17-6-1(a).

31.34.  Defendant Judge Atwood is responsible for conducting the "rights read" proceeding for any arrestee unable to pay the monetary amount required by the bail schedule. Arrestees appear without counsel.  At the proceeding, Atwood[8] conducts a short interview of each arrestee regarding his or her criminal history, length of time in the community, education level, and employment status.  Atwood then finalizes the arrestee's bail amount, which typically does not deviate from the amount set forth in the bail schedule.[9]  Atwood does not inquire into an arrestee's ability to afford the bail amount.

32.35.  Atwood occasionally inquires into an arrestee's ability to pay for other standard pretrial supervision costs—the costs of reporting to a probation officer, receiving any mandated treatment, and covering any electronic monitoring—though this is after the bond amount has been set.  However, even when the cost of pretrial supervision is waived due to an arrestee's financial status, the bail amount is not revisited.

33.36.  Defendant Attorney Zeh, the misdemeanor public defender, does not represent indigent defendants at the "rights read" proceeding.

34.37.  Conversely, attorneys for individuals who can afford private counsel represent their clients at "rights read" if the client is still detained.  When private counsel appears, they are allowed to make an argument for their client's release.

35.38.  At the "rights read" proceeding, unrepresented arrestees are not allowed to present witnesses or evidence or speak on their own behalf whatsoever.

36.39.  At the "rights read" proceeding, Atwood typically asks unrepresented arrestees if they have heard from their public defender, Defendant Zeh.  Generally, indigent misdemeanor

---

[8] While other Glynn County Magistrate Judges may occasionally preside over "rights read" proceedings, Judge Atwood is ultimately responsible for their administration as Chief Magistrate Judge.
[9] For persons arrested without a warrant on charges falling under the Georgia Family Violence Act, this is typically the *first* time bail is considered or set, per statute.  Ga. Code Ann. §17-6-1(b)(2)(B).

arrestees have not met with Zeh or a representative of his office when asked at "rights read." By the time of "rights read," virtually no indigent misdemeanor arrestees have been appointed a public defender.

37.40. At no point during the "rights read" proceeding does Atwood consider whether release with court date reminders or on nonfinancial release conditions short of secured money bail might reasonably assure an unrepresented arrestee's appearance at court or the safety of persons in the community.

38.41. If an arrestee is unable to pay the bond amount set at her "rights read" proceeding, Sheriff's Department employees take her back into custody, and she remains incarcerated indefinitely.

39.42. By contrast, arrestees who are able to pay the bond amount set at "rights read" are released from the detention center immediately upon payment.

### iii. After "Rights Read," Bail is Not Reviewed, and Indigent Arrestees are Only Afforded Hearings to Plead Guilty

40.43. After a "rights read" proceeding, arrestees accused of misdemeanors who cannot afford to pay bail or hire a private defense attorney receive no notice of any other opportunity to challenge their bail amounts, and Defendants do not otherwise provide any hearing to review bail.

41.44. Moreover, Defendant Attorney Zeh, the public defender in all misdemeanor cases in Glynn County, does not visit indigent clients in the detention center, or file motions to reduce bail or habeas petitions on their behalf.

42.45. After "rights read," the next time an incarcerated arrestee appears in court will either be for a weekly hearing called "jail pleas" to enter a guilty plea, or at an in-custody arraignment, which occurs monthly. Whether an arrestee first proceeds to a guilty plea hearing

or arraignment depends largely on chance, hinging entirely on the timing of their arrest and the court's calendars.

43.46.  At arraignment, which is conducted by Defendant Altman in the Glynn County State Court, accused persons are informed of their right to trial by judge or jury and of their right to counsel, and are encouraged to plead guilty and proceed without counsel in order to "take care of things quickly," or "get back to work."  Arrestees typically also receive the advisement that "most people proceed without a lawyer," and that to do so "is just easier." Accordingly, many accused persons plead guilty at their arraignment—likely because this is the only way they will have an opportunity to speak to the judge.

44.47.  If, at arraignment or a "jail plea" hearing, an incarcerated arrestee chooses to plead not guilty, the arrestee bears the burden of contacting Defendant Attorney Zeh and seeking his appointment as public defender.

45.48.  The actual appointment procedures for Zeh are unclear.  Arrestees are required to contact Zeh themselves, after obtaining his phone number either from the kiosk in the Glynn County Detention Center or the Clerk of Court.  Zeh determines whether or not an individual is eligible to receive public defense representation, based on unknown criteria, and he only returns prospective client calls on Fridays.  It is unclear whether or how Zeh returns the calls of incarcerated persons.

46.49.  At some point after Zeh has received an individual's call,[10] his secretary may enter an appearance on his behalf in their criminal case.

---

[10] In 1999, the Georgia Supreme Court adopted guidelines requiring that counsel be appointed within 72 hours of arrest or detention and that appointed counsel make contact with clients promptly after actual notice of appointment.  Georgia Supreme Court Indigent Defense Commission Report (2001), p. 24 n. 85 ("[A]ppointment of counsel is required within 72 hours of 'arrest or detention. Counsel shall make contact

47.50.  However, after Zeh's secretary enters his appearance, Zeh does no work on the case, and he typically meets the client for the first time at the weekly "jail plea" hearing.

48.51.  At this hearing, unrepresented detainees are brought into court, introduced to Zeh, informed of the plea deal offered by the prosecution, and offered an opportunity to plead guilty. Given Zeh's custom of appearing first and solely for his client's guilty plea and sentencing, indigent persons facing misdemeanor charges in Glynn County cannot expect the timely assistance of counsel in seeking pretrial release.

49.52.  The majority of arrestees who cannot afford to post bail or hire a private attorney plead guilty at the next hearing scheduled by the court.

50.53.  Even in the rare cases in which an arrestee pleads not guilty and invokes her rights to the assistance of counsel, Zeh does not pursue motions to reduce bail or habeas petitions challenging bail determinations on behalf of indigent arrestees, forcing those who cannot post bail to wait upwards of two years under the statute of limitations for the filing of a formal charge.[11]

54.  On at least one occasion, Defendant Zeh has required indigent misdemeanor arrestees pay him when they are referred to him as the public defender.

### B. Defendants Fail to Provide Counsel to Indigent Persons Accused of Misdemeanors, Further Entrenching the Divide Between Those With Means andfrom Those Without Means

51.55.  As discussed above, in Glynn County, persons accused of misdemeanors are only provided meaningful access to pretrial proceedings if they can afford to hire an attorney. Those

---

with the person promptly after actual notice of appointment.'") (citing Georgia Supreme Court Guidelines §1.2), attached as Ex. E to Woods Decl.
[11] Generally, misdemeanors are tried under a formal charging document known as an accusation. Ga. Code Ann. § 17-7-71. State law provides the prosecution with two years from the commission of a misdemeanor in which to formally commence charges through an accusation. Ga. Code Ann. §17-3-1(e).

who cannot afford to hire private counsel proceed without the opportunity to argue for lower bail or the assistance of counsel to investigate defenses, to bring suppression motions, to confront witnesses, to negotiate a potential resolution, or to prepare for and conduct a defense at trial.

~~52.~~56.  Glynn County's two-tiered pretrial justice system thus infects the provision of counsel and all of the procedural protections that flow therefrom.  Arrestees who can afford private counsel are given opportunities to argue for bail modifications, review and challenge the evidence against them, negotiate potential resolutions, and vindicate their right to trial.  Arrestees who cannot afford private counsel are left to fend for themselves, waiting with futility to hear from Defendant Attorney Zeh's office, and offered no more process than an "opportunity" to plead guilty as the quickest way out of jail.[12]

## C.  Defendants' Disparate Treatment of People Without the Means to Pay Bail or Hire Counsel Have Devastating Consequences

~~53.~~57.  The ability to secure one's pretrial release—controlling for all other factors—is the single greatest predictor of a criminal conviction.[13]  Moreover, studies show that those detained pretrial face worse outcomes at trial and sentencing than those released pretrial, even when charged with the same offense.[14]  Controlling for other factors, those detained pretrial are

---

[12] Because sentences for misdemeanor offenses often consist entirely of probation, many indigent defendants plead guilty as the quickest way to leave incarceration.

[13] *See* Christopher T. Lowenkamp, Marie VanNostrand & Alexander Holsinger, *Investigating the Impact of Pretrial Detention on Sentencing Outcomes*, 10–11 (2013), http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_state-sentencing_FNL.pdf, attached as Ex. F to Woods Decl.; Mary T. Philips, New York City Crim. Justice Agency, Inc., *Pretrial Detention and Case Outcomes, Part 1: Nonfelony Cases*, 25–29 (2007), http://www.nycja.org/lwdcms/doc-view.php?module=reports&module_id=669&doc_name=doc, attached as Ex. G to Woods Decl.

[14] Lowenkamp, *supra* note 13, at 4, attached as Ex. F to Woods Decl. (those detained for the entire pretrial period are more likely to be sentenced to jail and prison—and receive longer sentences—than those who are released at some point before trial or case disposition).

given longer sentences of incarceration.  Detained arrestees are more likely to plead guilty just to shorten their jail time, even if they are innocent.[15]

54.58.  The reasons are straightforward.  Being detained prior to trial makes it much more difficult for an arrestee to prepare a defense, preserve and gather evidence or witnesses, and meet with her public defender.  In Glynn County, pretrial detention makes vindication of these rights all but impossible.

55.59.  Additionally, pretrial detention carries significant personal costs including lost jobs, a loss of stability within home and family life, an inability to care for children or other dependents, an inability to look after one's own medical needs, and exposure to dangerous and unsanitary conditions in jail.

56.60.  For many people facing these dire personal circumstances, they are left only with the option to plead guilty in order to gain their freedom, or remain in jail indefinitely, without any hearings or the assistance of counsel, until trial.  The overwhelming majority of arrestees plead guilty to end this ordeal.

57.61.  Plaintiff Mock is unemployed and cannot afford to pay the bail set in her case or hire a private attorney.

58.62.  Plaintiff Ogden is unemployed and cannot afford to pay the bail set in his case or hire a private attorney.

---

[15] Megan Stevenson, *Distortion of Justice: How the Inability to Pay Bail Affects Case Outcomes*, 18–20 (2016), http://www.econ.pitt.edu/sites/default/files/Stevenson.jmp2016.pdf, attached as Ex. H to Woods Decl.  ("Pretrial detention leads to an unexpected increase of 124 days in the maximum days of the incarceration sentence, a 42% increase over the mean."); *see also* Arpit Gupta, Christopher Hansman, & Ethan Frenchman, *The Heavy Costs of High Bail: Evidence from Judge Randomization*, 3–4 (2016), http://www.columbia.edu/~cjh2182/GuptaHansmanFrenchman.pdf, attached as Ex. I to Woods Decl.  ("Many defendants who are detained on money bail before trial may consequently choose to plead guilty to avoid or minimize further detention. Prosecutors commonly offer detained defendants a plea of "time-served," where defendants will receive credit for time already spent in detention and will therefore be released immediately upon conviction.").

63.    Plaintiff Cox is unemployed.  He could not afford to pay preset bail in his previous misdemeanor cases, nor would he be able to be if arrested in the future.  He cannot afford to hire a private attorney.

**D.    Defendants' Practices Run Contrary to the Purpose of Bail Under Georgia Law and are Unnecessary to Achieve Public Safety or the Administration of Justice**

~~59.~~64.  Under Georgia law, bail is primarily meant to assure court appearance.  Public safety is a valid, but secondary consideration.  Georgia law provides that, "at no time . . . shall any person charged with a misdemeanor be refused bail."  Ga. Code Ann. § 17-6-1(b)(1).[16]

~~60.~~65.  Defendants' wealth-based scheme does not serve either of the state's interests in bail.  Because Defendants Glynn County, Judge Altman, Judge Atwood, and Sheriff Jump initially set bail via a predetermined bail schedule, they do not consider the probability of an arrestee's appearance at trial.  Moreover, at the "rights read" proceeding, Atwood generally does not consider an arrestee's flight risk *or* danger to public safety.  Nor does Atwood consider alternatives, including release with court-date reminders or on reasonable nonfinancial conditions~~,~~ that might reasonably assure an individual's appearance in court.  Finally, Atwood does not consider whether an arrestee has the present ability to pay the bond amount set at "rights read."

~~61.~~66.  Defendants' practices actually undermine the state's interests.  First, by conditioning pretrial release on wealth, individuals with sufficient means can buy their release regardless of the danger or flight risk they present.

---

[16] This right to bail at all stages of a misdemeanor case is subject only to the limitation found in § 17-6-1(g) of the Georgia Code, which restricts the right to an *appeal* bond for misdemeanors that are considered "family violence" or "high and aggravated" misdemeanors at the "discretion of the convicting court."  This limitation is not at issue here, in the pretrial context.

62.67.  Second, even two or three days in pretrial detention increases the likelihood of re-arrest and failure to appear in court among people who ultimately obtain their pretrial release, due in large part to the instability and duress presented by incarceration itself.[17]

63.68.  There is no significant relationship between the requirement of secured money bail and an arrestee's court appearance.[18]

64.69.  Rather, other jurisdictions employ numerous less restrictive, non-monetary conditions of release—set after an individualized hearing—to maximize court appearance and, where a specific likelihood of harm is shown, public safety.  Such non-monetary conditions include, but are not limited to, the following:  unsecured bond, reporting obligations, phone or text reminders of court dates, transportation assistance in getting to court, substance abuse treatment, mental health treatment, counseling, alcohol or drug monitoring, release to a third party custodian, the imposition of no-contact orders or travel restrictions, the imposition of a curfew, or—in extreme cases of particular risk—electronic location monitoring and home confinement.

65.70.  Jurisdictions that employ pretrial services and non-monetary conditions of release do not sacrifice court appearance or public safety.  In 1992, Washington, D.C. abolished setting money bail that would lead to pretrial detention, and since then crime rates have only continued

---

[17] Christopher T. Lowenkamp, et al., *The Hidden Costs of Pretrial Detention*, 4 (2013), http://www.arnoldfoundation.org/wp-content/uploads/2014/02/LJAF_Report_hidden-costs_FNL.pdf, attached as Ex. J to Woods Decl.

[18] Gupta, *supra* note15, at 21 ("Our results suggest that money bail has a negligible effect or, if anything, increases failures to appear."); Michael R. Jones, *Unsecured Bonds: The As Effective and Most Efficient Pretrial Release Option*, 11 (2013), http://www.pretrial.org/download/research/Unsecured+Bonds,+The+As+Effective+and+Most+Efficient+Pretrial+Release+Option+-+Jones+2013.pdf, attached as Ex. K to Woods Decl. ("Whether released defendants are higher or lower risk or in-between, unsecured bonds offer decision-makers the same likelihood of court appearance as do secured bonds.").

to decline,[19] while court appearance rates remain high. Approximately 88 percent of defendants in Washington, D.C., are released on non-financial conditions, with the remaining population detained.[20] In 2014 and 2015, over 91 percent were not rearrested—for any reason—while in the community prior to their trial.[21] Of particular note, 98 percent of released defendants remained free of arrest for a violent crime while in the community awaiting trial.[22]

66.71. Similarly, success in the federal pretrial system—which largely avoids the imposition of money bail[23]—demonstrates the needlessness of secured money bail to protect public safety. Between 2001 and 2007, in the federal criminal system, just over 96 percent of the persons released pretrial—across all "risk levels"—had no documented conduct presenting a "danger to the community."[24] Even considering the highest "risk level" identified by the Office of Probation and Pretrial Services, over 84 percent of persons released had complete success during the period before trial, meaning no failures to appear and no rearrests for dangerous conduct.[25]

67.72. Finally, pretrial detention based on wealth is consistently more expensive than effective pretrial supervision programs.[26]

---

[19] *See, e.g.* Matthew Friedman, et al., *Crime Trends: 1990-2016*, 27 (2017), https://www.brennancenter.org/sites/default/files/publications/Crime%20Trends%201990-2016.pdf, attached as Ex. L to Woods Decl.

[20] Pretrial Services Agency for the District of Columbia, *Research and Data, Performance Measures*, www. psa.gov, *available at* https://www.psa.gov/?q=data/performance_measures (last visited March 5, 2018).

[21] *Id.*

[22] *Id.*

[23] *See* 18 U.S.C. § 3142(a)–(b).

[24] Marie VanNostrand, Ph.D. and Gena Keebler, *Pretrial Risk Assessment in the Federal Court*, 22–3 (2009), https://www.pretrial.org/download/risk-assessment/Pretrial%20Risk%20Assessment%20in%20the%20Federal%20Court%20Final%20Report%20(2009).pdf, attached as Ex. M to Woods Decl.

[25] *Id.*

[26] United States Courts, *Supervision Costs Significantly Less than Incarceration in Federal System*, www.uscourts.gov, *available at* http://www.uscourts.gov/news/2013/07/18/supervision-costs-

# V.    CLASS ACTION ALLEGATIONS

68.73. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, named Plaintiffs bring this suit on behalf of themselves and all others similarly situated who have been, are, or will in the future be affected by Defendants' unconstitutional policies, practices, and customs.

69.74. Named Plaintiffs Mock, Ogden, and Cox seek to represent a primary class of individuals (the "Bail Class") with respect to Claims One and Two, to obtain declaratory and injunctive relief requiring Defendants Glynn County, Altman, Atwood, and Jump to end their wealth-based pretrial detention and provide individualized bail determinations. The Bail Class shall be defined as misdemeanor arrestees in Glynn County who have been or will be detained because they are unable to pay the amount of bail required for their release.

70.75. Named Plaintiffs Mock, Ogden, and Cox seek to represent a subclass (the "Counsel Class") with respect to Counts Three and Four, seeking declaratory and injunctive relief from Defendants Glynn County and Zeh's delay in appointing counsel to those who cannot afford to hire private counsel.

71.76. The Counsel Class shall be defined as all arrestees who have faced a misdemeanor charge in Glynn County whose maximum income is 100 percent of the federal poverty guidelines or less[27] and who thus otherwise qualify for a public defender.

## A.    Numerosity

72.77. Both classes are so numerous as to render joinder of all members impracticable, and, because both classes includes future members, the size of the classes will only grow over time as Defendants' unconstitutional practices persist.

---

significantly-less-incarceration-federal-system (last visited March 8, 2018) (In 2012, "[p]retrial detention for a defendant was nearly 10 times more expensive than the cost of supervision of a defendant by a pretrial services officer in the federal system.").

[27] *See* Ga. Code Ann. §17-12-2.

73.78.  Collecting data over a three-month period, at least 122 people ~~have been~~were incarcerated at the Glynn County Detention Center on pending misdemeanor charges.  *See* Basurto Decl.  Of this number, at least 74 were detained for two or more nights, and 30 people were detained for seven or more nights.  *Id.*  Moreover, the proposed Bail Class includes future members, rendering joinder even more impracticable.  Finally, the Bail Class seeks to vindicate rights arising during a time-limited period:  the days between arrest and resolution of a case.

74.79.  Joinder of the proposed Counsel Class would also be impracticable.  Of the members of the proposed Bail Class listed above, 74 people were incarcerated and unable to post bail for at least two nights.  It is reasonable to infer that a large percentage of those people proceeded through a "rights read" hearing, which occurs every-other day, without the aid of counsel.  As with the proposed Bail Class, the proposed Counsel Class contains future members, increasing the impracticability of joinder.  Members of the Counsel Class seek to bring inherently transitory constitutional challenges based on the period of time between misdemeanor arrest and the entry of a guilty plea, which supports a finding of numerosity.  Finally, members of the Counsel Class are, by definition, indigent.  Thus, proposed class members are unlikely to have the resources to otherwise bring their own individual lawsuits to vindicate their constitutional rights.

**B.    Commonality: Bail Class**

75.80.  There are questions of law and fact common to each class.

76.81.  Questions of fact common to the Bail Class include the following:

   a.  Whether Defendants Glynn County and Sheriff Jump use a predetermined bail schedule created by Defendant Judges Altman and Atwood;

   b.  Whether Jump releases arrestees from jail who pay the monetary amount required by the bail schedule and detains those who cannot;

c. Whether Jump detains all individuals who are unable to pay a monetary bail amount regardless of whether an inquiry into their ability to pay has been made;

d. Whether Jump detains all individuals who are unable to pay a monetary bail amount regardless of whether less restrictive alternative conditions of release were considered in determining that bail amount;

e. Whether Atwood conducts individualized release hearings and what procedural protections, including counsel, are provided at those hearings;

f. Whether Atwood inquires into arrestee's ability to pay at these hearings;

g. Whether the primary factor considered at an individualized release hearing is an arrestee's likelihood to appear for trial;

h. Whether Atwood considers less restrictive alternatives for release prior to setting bail an arrestee cannot afford;

i. Whether arrestees are allowed to present witnesses or argument demonstrating their suitability for release;

j. Whether pursuant to individualized hearings, if bail is routinely set at an amount that an arrestee cannot afford; and

k. What standard post-arrest procedures Defendants perform on misdemeanor arrestees—for example, whether Defendants use any alternate procedures for promptly releasing people determined otherwise eligible for release but who are unable to afford a monetary payment.

77.82.  Questions of law common to the Bail Class include:

a. Whether enforcing a wealth-based pretrial detention system in which arrestees are jailed solely based on their ability to access money violates the Fourteenth Amendment;

b. Whether requiring a financial condition of pretrial release without inquiry into and findings concerning a person's ability to pay, and without consideration of alternative conditions of release, violates the Fourteenth Amendment;

c. Whether Plaintiff and the proposed Bail Class have a fundamental interest in their pretrial liberty;

d. Whether requiring a person arrested for a misdemeanor offense to pay a monetary bail amount predetermined by a bail schedule is not narrowly tailored to achieve the government's interests in securing a defendant's appearance in court or public safety, thus contravening substantive due process protections;

e. Whether there are less restrictive means to reasonably achieve the government's interests;

f. Whether Defendants Glynn County, Jump, Altman, and Atwood's detention of indigent arrestees using predetermined amounts of money without providing a sufficiently prompt release hearing violates the Fourteenth Amendment's procedural due process protections;

g. Whether procedural due process requires individualized, adversarial hearings with counsel prior to pretrial detention on money bail;

h. Whether detention of arrestees on money bail they cannot afford requires justification by clear and convincing evidence supported by recorded findings of fact; and

i. Whether the "rights read" proceedings amount to individualized bail determinations with sufficient procedural due process safeguards under the Fourteenth Amendment.

**C.      Commonality: Counsel Class**

78.83.  Questions of fact common to the Counsel Class include the following:

a. Whether and when indigent misdemeanor arrestees are informed of their right to counsel;

b. Whether and when indigent misdemeanor arrestees are informed of their right to a jury trial;

c.  Whether Defendant Attorney Zeh contacts indigent misdemeanor arrestees pursuant to their arrest, or whether Zeh's contact with indigent misdemeanor arrestees occurs pursuant to their reaching out to his office;

d.  What is the mean and median delay between an indigent person's arrest for a misdemeanor charge and Zeh entering an appearance in their case;

e.  Whether Zeh unilaterally determines who is eligible for misdemeanor public defense services in Glynn County;

f.  Whether Zeh visits indigent misdemeanor arrestees in the Glynn County Detention Center;

g.  Whether Defendant Judge Atwood conducts individualized release hearings within 24 to 48 hours of arrest, and whether Zeh or a representative from his office represents indigent misdemeanor arrestees at such hearings;

h.  Whether Zeh files motions to modify or reduce bail on behalf of indigent misdemeanor arrestees;

i.  Whether Zeh files habeas petitions to reduce bail on behalf of indigent misdemeanor arrestees;

j.  Whether Zeh files any other type of pretrial motion on behalf of indigent misdemeanor arrestees.

~~79.~~84.  Questions of law common to the Counsel Class include the following:

a.  -Whether depriving indigent misdemeanor arrestees of the timely appointment of counsel in order to argue for their pretrial liberty violates the Fourteenth Amendment's Equal Protection Clause;

b.  Whether, under the facts of this case, a bail determination presents a "critical stage" for which counsel must be provided under the Sixth Amendment; and

c.  Whether putting Defendant Zeh in sole control over whether and when misdemeanor arrestees receive the assistance of counsel deprives arrestees of their Sixth and Fourteenth Amendment rights to a fair trial and procedural due process.

**D.     Typicality**

80.85.  The claims of named Plaintiffs are typical of the claims or defenses of the Bail Class.  Ms. Mock is an indigent person arrested for criminal trespass, a misdemeanor charge. Ms. Mock is currently incarcerated due to her inability to pay the bail amount set automatically by Defendant Judge Atwood's bail schedule.  Mr. Ogden is an indigent person arrested for criminal trespass, a misdemeanor charge.  Mr. Ogden is currently incarcerated due to his inability to pay the bail amount set automatically in his case.  Mr. Cox is an indigent person who has been arrested for misdemeanor charges, incarcerated because he was unable to pay a bail amount automatically set in his cases, and deprived of the aid of counsel in challenging his pretrial detention.  The constitutional deprivations suffered by named Plaintiffs are the same as those of putative class members.

81.86.  The claims of named Plaintiffs are typical of the claims or defenses of the Counsel Class.  Ms. Mock is an indigent person arrested for a misdemeanor charge.  Zeh has not contacted Ms. Mock, nor entered an appearance on her behalf.  Mr. Ogden is an indigent person accused of a misdemeanor, and Zeh has not contacted Mr. Ogden or entered an appearance on his behalf.  Mr. Cox is an indigent person arrested on several misdemeanor charges.  Zeh never contacted Mr. Cox, nor entered an appearance on his behalf, until Mr. Cox was pleading guilty and being sentenced.  Given Defendants Glynn County and Zeh's longstanding custom of failing to provide counsel to indigent persons at an individualized release hearing, named Plaintiffs Mock and Ogden reasonably expect to receive no assistance in arguing for their pretrial release. The constitutional deprivations suffered by named Plaintiffs are the same as those of putative class members.

### E.    Adequacy of Representation

82.87.  The named Plaintiffs and their attorneys will fairly and adequately protect the interest of both classes.  The named Plaintiffs have no interests antagonistic to either class and are represented by attorneys with significant expertise in criminal procedure and complex civil litigation.

83.88.  Named Plaintiffs seek systemic reform in Glynn County to eliminate wealth-based pretrial detention and the delay in providing counsel to indigent persons accused of misdemeanors.  Defendants' actions and omissions in violation of the federal constitution apply generally within each class; thus, final declaratory and injunctive relief is appropriate for the proposed classes.

## F.      Adequacy of Counsel

84.89.  Class counsel is adequate under Fed. R. Civ. P. 23(g).  Counsel has experience handling class actions and complex federal civil litigation and are familiar with the subject matter at issue in this case.  *See* Declarations of Buskey, Carter, Tucker, Woods, Yancey, and Young.

## VI.      CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution
(Equal Protection and Due Process)
Plaintiffs and Proposed Bail Class versus Defendants Glynn County, Altman, Atwood, and Jump**

85.90.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

86.91.  The Fourteenth Amendment to the U.S. Constitution prohibits jailing a person solely because of his or her inability to make a monetary payment.

87.92.  Defendants Glynn County, Altman, Atwood, and Jump violate Plaintiffs' and the Bail Class's right to equal protection under the Fourteenth Amendment by enforcing against them a post-arrest system of wealth-based detention in which Plaintiffs and class members are kept in jail because they cannot afford a monetary amount of bail determined without inquiring into—or establishing findings concerning—the class member's ability to pay.

88.93.  Moreover, Plaintiffs and the proposed Bail Class have a fundamental interest in their pretrial liberty under state and federal law.

89.94.  Defendants' requirement that a person arrested for a misdemeanor offense pay a monetary bail amount determined without inquiring into their ability to pay or considering less restrictive alternatives is not narrowly tailored to achieve the government's interests in securing a defendant's appearance in court or public safety.

**SECOND CLAIM FOR RELIEF**
**Fourteenth Amendment to the Constitution**
**(Procedural Due Process)**
**Plaintiffs and Proposed Bail Class versus Defendants Glynn County, Altman, Atwood, and Jump**

90.95.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

91.96.  Due Process requires that, before the government can deprive an individual of his pretrial liberty, the arrestee must receive a prompt, individualized hearing with counsel, at which an individual may only be incarcerated if a neutral decision-maker makes a finding on the record and by clear and convincing evidence that no less restrictive alternatives would be sufficient to reasonably advance the purposes of bail.

92.97.  Defendants violate Plaintiffs' and the Bail Class's right to due process under the Fourteenth Amendment by detaining individuals without providing any of the procedural protections—including a prompt individualized hearing, representation by counsel, and findings

28

by at least clear and convincing evidence that no less restrictive conditions will serve the government's purposes—required before the government may deprive an individual of pretrial liberty.

### THIRD CLAIM FOR RELIEF
**Sixth Amendment to the Constitution
(Right to Counsel)
Plaintiffs and Proposed Counsel Class versus Defendants Glynn County and Zeh**

~~93.~~98.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

~~94.~~99.  Plaintiffs and the proposed Counsel Class have a right under the Sixth Amendment to the prompt appointment of counsel for representation at all critical stages of the prosecution.

~~95.~~100.  Defendants Glynn County and Zeh violate Plaintiffs' Sixth Amendment right to counsel by unreasonably delaying representation to misdemeanor arrestees such that they are deprived of counsel at a critical stage, and further by generally not providing any representation until arrestees are brought to court for guilty pleas.

### FOURTH CLAIM FOR RELIEF
**Fourteenth Amendment to the Constitution
(Equal Protection and Due Process)
Plaintiffs and Proposed Counsel Class versus Defendants Glynn County and Zeh**

~~96.~~101.  Plaintiffs incorporate by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

~~97.~~102.  Defendants Glynn County and Zeh violate Plaintiffs' and the Counsel Class's right to equal protection and due process under the Fourteenth Amendment by unreasonably delaying access to counsel to indigent misdemeanor arrestees such that they cannot argue for their pretrial liberty.

**FIFTH CLAIM FOR RELIEF**
**Ga. Code Ann. § 51-10-6**
**(Theft of Personal Property)**
**Plaintiff Hamilton versus Defendant Zeh**

103.    Plaintiff Hamilton incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

104.    On April 1, 2015, Defendant Zeh took $2,500 of Ms. Hamilton's personal property by threatening to withhold action as a public official—namely, to refuse to provide public defender services to her son, Plaintiff Cox.

105.    On April 1, 2015, Defendant Zeh took $2,500 of Ms. Hamilton's personal property by deceiving her and her son into believing such payment was necessary for legal representation, when public defender services should have been available due to Mr. Cox's indigence.

106.    Under Ga. Code Ann § 51-10-6, an owner of personal property such as Ms. Hamilton may bring a civil action to recover damages from a person who commits a theft as defined in Article 1 of Chapter 8 of Title 16 to the Georgia Code.

107.    Under section (a)(4) of Ga. Code Ann. § 16-8-16, contained in Article 1 of Chapter 8 of Title 16 of the Georgia Code, a person commits theft by "threatening to . . . take or withhold action as public official . . ."

108.    Under section (b) of Ga. Code Ann. § 16-8-3, contained in Article 1 of Chapter 8 of Title 16 of the Georgia Code, a person commits theft by deception when he "obtains property by any deceitful means or artful practice with the intention of depriving the owner of the property."

109.    Defendant Zeh is liable to Ms. Hamilton for compensatory damages of $2,500 for theft by extortion.

110.  Defendant Zeh is liable to Ms. Hamilton for compensatory damages of theft by deception.

**SIXTH CLAIM FOR RELIEF**
**Ga. Code Ann. § 51-6-1**
**(Fraud)**
**Plaintiff Hamilton versus Defendant Zeh**

111.  Plaintiff Hamilton incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

112.  On April 1, 2015, Defendant Zeh took $2,500 of Ms. Hamilton's personal property by falsely representing to her son, named Plaintiff Cox, that this sum was needed in order for him to receive the legal assistance of the public defender.

113.  Defendant Zeh, as a public defender for Glynn County, knew or should have known that indigent misdemeanor arrestees are entitled to the aid of public defense counsel without requiring payment on their part, and thus that eliciting such a payment was illegal and unethical.  Further, Defendant Zeh knew or should have known of a Circuit Public Defender's office to which Mr. Cox, an indigent defendant, could have been referred in the event his case was transferred to Superior Court.

114.  Defendant Zeh represented that he would not provide public defense services, nor did he refer Mr. Cox to any other public defender, in an effort to elicit a $2,500 payment from named Plaintiff Cox or Ms. Hamilton.

115.  Ms. Hamilton and Mr. Cox reasonably relied on Zeh's representation, that Zeh, who her son was referred to as the public defender, required a $2,500 payment.

116.  Ms. Hamilton was damaged through the loss of $2,500.

117. Under Ga. Code Ann. § 51-6-1, "fraud, accompanied by damage to the party defrauded, always gives a right of action to the injured party."

118. Defendant Zeh's actions in eliciting a $2,500 payment from Ms. Hamilton upon referral for public defense representation for her son, Plaintiff Cox, constitute fraud.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs requests the following relief:

a. That the Court assume jurisdiction over this action;

b. Certification of the Bail and Counsel Classes under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, represented by Andrea Woods, Twyla Carter, and Brandon Buskey of the American Civil Liberties Union Foundation, Kosha Tucker and Sean Young of the American Civil Liberties Union of Georgia, and James Yancey, Jr. of Brunswick, Georgia.

c. A declaration that Defendants Glynn County, Judge Altman, Judge Atwood, and Sheriff Jump have violated Plaintiffs' and the members of the proposed Bail Class's right to equal protection and due process under the Fourteenth Amendment by administering a pretrial system of wealth-based detention, without considering an arrestee's ability to pay or less restrictive alternatives; and that this system is not narrowly tailored to serve the government's interests;

d. A declaration that all Defendants Glynn County, Judge Altman, Judge Atwood, and Sheriff Jump have violated Plaintiffs' and the members of the proposed Bail Class's right to procedural due process under the Fourteenth Amendment by depriving arrestees of speedy, individualized release hearings with counsel, at which an individual class member receives the presumption of pretrial release and the government bears the burden of showing clear and convincing evidence of a serious risk of flight or physical threat to a specific person or persons;

e. A declaration that Defendants Glynn County and Attorney Zeh have violated Plaintiffs and the members of the Counsel Class's right to counsel under the Sixth Amendment by failing to provide indigent arrestees counsel at an individualized bail determination;

f.  A declaration that Defendants Glynn County and Zeh have violated Plaintiffs' and the members of the Counsel Class's right to equal protection and due process under the Fourteenth Amendment by conditioning meaningful access to the pretrial system based on whether arrestees can afford counsel;

g.  A temporary restraining order enjoining Defendants Jump and Glynn County from detaining Plaintiffs Mock and Ogden solely for their inability to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards—including counsel—that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record by clear and convincing evidence that any conditions of release are the least restrictive conditions necessary to achieve public safety and court appearance;

h.  An order and judgment preliminarily and permanently enjoining Defendants Jump and Glynn County from prospectively detaining arrestees solely for their inability to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve court appearance and public safety;

i.  An order and judgment permanently enjoining Defendants Jump, Altman, Atwood, and Glynn County from prospectively detaining arrestees solely for their inability to pay the monetary amount required by the bail schedule without a prompt individualized release hearing with adequate procedural safeguards that includes an inquiry into and findings concerning their ability to pay, the suitability of alternative non-financial conditions of release, and a finding on the record that any conditions of release are the least restrictive conditions necessary to achieve court appearance and public safety;

i.j.  An award of compensatory damages to Plaintiffs Mock and, Ogden, and Cox individually from Defendant Glynn County for the unconstitutional actions of its final policymakers Jump, Altman, and Atwood in detaining Plaintiffs solely because they could not afford bail; or, in the alternative, if the Court finds that either Jump, Altman, or Atwood are not

final policymakers for the county, that the Court award damages to Plaintiffs from Defendants Jump, Altman, and/or Atwood in their individual capacities;

j.k. That the Court award compensatory damages incidental to the order of declaratory and injunctive relief to Plaintiffs and the proposed Bail Class from Defendant Glynn County for the unconstitutional actions of its final policymakers Jump, Altman, and Atwood; or, in the alternative, if the Court finds that either Jump, Altman or Atwood are not final policymakers for the county, that the Court award damages to the proposed Bail Class from Defendants Jump, Altman, and/or Atwood in their individual capacities;

k.l. That the Court award compensatory damages to Plaintiffs Mock, Ogden, and Cox individually from Defendant Glynn County for the unconstitutional actions of its final policymaker Zeh in unreasonably delaying his representation of Plaintiffs in a manner that violates Plaintiffs' Sixth and Fourteenth Amendment rights; or, in the alternative, if the Court finds that Zeh is not a final policymaker for the county, that the courtCourt award damages to Plaintiffs from Defendant Zeh in his individual capacity;

l.m.      That the Court award compensatory damages incidental to the order of declaratory and injunctive relief to Plaintiffs and the proposed Counsel Class from Defendant Glynn County for the unconstitutional actions of its final policymaker Zeh; or, in the alternative, if the Court finds that Zeh is not a final policymaker for the county, that the Court award damages to the proposed Counsel Class from Defendant Zeh in his individual capacity;

n. That the Court award punitive damages to Plaintiff Cox from Defendant Zeh in his individual capacity for his pattern and practice of unreasonably delaying his representation of Mr. Cox, demonstrating a callous and reckless indifference to Mr. Cox's federally protected rights under the Sixth and Fourteenth Amendments.

o. That the Court award compensatory damages from Defendant Zeh to Plaintiff Ms. Hamilton in the amount of $2,500;

m.p.      An award of prevailing party costs, including attorney fees; and

n.q. Such other relief as the Court deems appropriate and just.

Dated: July 24, 2018.

<div style="margin-left: 50%">

Respectfully submitted,

/s/ Andrea Woods
Andrea Woods
*On behalf of Attorneys for Plaintiff*

James A. Yancey, Jr.
Georgia Bar Association No. 779725
Attorney at Law, P.C.
704 G Street
Brunswick, Georgia 31520-6749
Telephone: (912) 265-8562
Email: jayjr@standinthegap.biz

/s/ Kosha Tucker
Kosha Tucker,* Ga. Bar Association No. 214335
Sean J. Young, Ga. Bar Association No. 790399
American Civil Liberties Union of Georgia
PO Box 77208
Atlanta, GA 30357
Telephone: (678) 981-5295
Email: KTucker@acluga.org
Email: SYoung@acluga.org

/s/ Andrea Woods
Andrea Woods (lead counsel) *
Twyla Carter *
Brandon J. Buskey **
American Civil Liberties Union Foundation
Criminal Law Reform Project
125 Broad Street, 18th Floor
New York, NY 10004
Telephone: (212) 284-7364
Email: awoods@aclu.org
Email: tcarter@aclu.org
Email: bbuskey@aclu.org
*Admitted pro hac vice*
**Admission pro hac vice pending*

**Attorneys for Plaintiff**

</div>

## Certificate of Service

This is to certify that I have this day served counsel for Defendants in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing. Upon notice that Plaintiffs have leave to file this First Amended Complaint, I will arrange for service of the First Amended Complaint and a summons and/or a request for waiver from Bart Altman, Glynn County State Court Judge.

Submitted this 24th day of July, 2018.
/s/ Andrea Woods
Andrea Woods*
Washington Bar Association No. 48265
Attorney for Plaintiffs Margery Mock and Eric Scott Ogden, Jr.
* Admitted pro hac vice