IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARGERY FREIDA MOCK and ERIC SCOTT OGDEN, JR., individually and on behalf of others similarly situated, | *<br>*<br>*<br>* |
| Plaintiffs | *<br>* |
| v. | * Case Number: 2:18-cv-25<br>* |
| GLYNN COUNTY, GEORGIA; E. NEAL JUMP, Glynn County Sheriff; ALEX ATWOOD, Glynn County Chief Magistrate Judge; and B. REID ZEH III, Glynn County Misdemeanor Public Defender, | *<br>*<br>*<br>*<br>*<br>* |
| Defendants | * |

**DEFENDANTS GLYNN COUNTY, GEORGIA AND E. NEAL JUMP'S
SUPPLEMENTAL BRIEF FOLLOWING ORAL ARGUMENT
ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

COME NOW Glynn County, GA and E. Neal Jump, Defendants in the above-styled case, and, pursuant to the Court's invitation at the conclusion of oral argument on Plaintiffs' Motion for Preliminary Injunction, file this supplemental brief opposing that motion:

**Introduction**

Defendants wish to briefly address three issues raised at oral argument. First, although Plaintiffs have largely avoided the threshold questions of whether they are proper parties to seek an injunction and whether Defendants Jump and Glynn are the proper targets of that claim, the answer to both questions is "no" and the Court need go no further in its analysis. Second, even if the merits of Plaintiffs' request for an injunction could be reached, recent authority from sister

1

courts confirms that Defendants' current bail practices are constitutionally sufficient. Finally, Plaintiffs are not entitled to an injunction requiring Defendants to continue adhering to their current bail practices because Plaintiffs have not carried their burden to demonstrate that Defendants are reasonably likely to revert to their prior practices at the conclusion of litigation. Plaintiffs' motion for a preliminary injunction should be denied in its entirety.

## Argument and Citation of Authority

**I.      *Plaintiffs do not have standing to seek the injunctive relief requested, and Defendants would not be the proper parties to give it even if it were warranted.***

Plaintiffs face two interrelated problems with respect to their ability to seek injunctive relief in this case, each of which is independently fatal to their motion. First, Plaintiffs do not have standing to pursue the preliminary injunction they request. "[T]hose who seek to invoke the power of federal courts must allege an actual case or controversy." *O'Shea v. Littleton*, 414 U.S. 488, 493–95, 94 S. Ct. 669, 675–76, 38 L. Ed. 2d 674 (1974). A plaintiff must show that he has a "personal stake in the outcome" in order to "assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult constitutional questions." *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). Where a plaintiff seeks injunctive relief against allegedly unconstitutional bail practices, his claim fails where he alleges only a past injury due to those practices. *O'Shea*, 414 U.S. at 495. Although "past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury" sufficient to confer standing to seek an injunction, that threat is merely speculative "[w]here the prospect of future injury rests on the likelihood that [plaintiffs] will again be arrested for and charged with violations of the criminal law and will again be subjected

to bond proceedings [] before [defendants]." *Id.* at 496.

The Supreme Court held that the petitioners in *O'Shea*, who alleged that they had been subjected to unconstitutional bond practices during prior arrests, did not have standing to pursue an injunction with respect to those practices because "the threat of a new prosecution was not sufficiently imminent to satisfy the jurisdictional requirements of the federal courts." *O'Shea v. Littleton*, 414 U.S. 488, 498, 94 S. Ct. 669, 677, 38 L. Ed. 2d 674 (1974). Here, Plaintiffs' argument for standing is even weaker than that of the petitioners in *O'Shea,* because Plaintiffs were never subjected to unconstitutional conduct by Defendants. Instead, as Defendants discussed at length in their reply brief supporting their Motion to Dismiss, Plaintiffs were released on their own recognizance, within 72 hours of their arrests, following a hearing before a judicial officer who made individualized determinations of their financial circumstances and abilities to post monetary bond. [Dkt. 55 at 2-3]. If the threshold for standing was not met by the petitioners in *O'Shea*, who alleged that they suffered illegal conduct during prior arrests but could do no more than speculate that they might be subject to that same conduct in the future, then it certainly is not met by Plaintiffs, who sustained no prior constitutional harm from Defendants and have not alleged any imminent threat of future harm. Plaintiffs' claims for injunctive relief should be denied because they do not have standing to pursue those claims.[1]

---

[1] *O'Shea* also forecloses any argument that Plaintiffs may establish standing by pointing to members of the class they seek to represent: "If none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. at 494. *Accord Church v. City of Huntsville,* 30 F.3d 1332, 1340 (11th Cir.1994) ("Thus, unless the plaintiffs have alleged that one of the named plaintiffs is in real and immediate danger of being personally injured by the city's enforcement of its building code and zoning ordinance, the plaintiff class lacks standing to challenge the alleged city practice, even if the persons described in the class definition would have standing themselves to sue."). Here, class

Relatedly, Plaintiffs cannot prevail on their claim for injunctive relief absent a showing that "irreparable injury" is likely to result if that relief is denied. *See Siegel v. LePore,* 234 F.3d 1163, 1175 (11th Cir. 2000) (affirming district court's denial of preliminary injunction, without considering plaintiffs' likelihood of success on the merits, "on the separate and independent ground that Plaintiffs had failed to show that irreparable injury would result if no injunction were issued"). And "when a class has not been certified, the only interests at stake are those of the named plaintiffs." *Goldstein v. Home Depot U.S.A., Inc.*, 609 F. Supp. 2d 1340, 1349 (N.D. Ga. 2009) (quoting *McKenzie v. City of Chicago*, 118 F.3d 552, 555 (7th Cir.1997)) (punctuation omitted). Plaintiffs are thus required to show that they, specifically, will suffer "irreparable injury" unless an injunction issues. They have not even attempted to do so. At oral argument, counsel for Plaintiffs discussed only the potential harm to Glynn County arrestees in general in attempting to demonstrate a likelihood of irreparable injury. Just as there has been no showing that Margery Mock and Eric Ogden face an imminent threat of future harm with respect to Defendants' bail practices, there has been no showing that they are likely to suffer an irreparable injury with respect to those practices absent injunctive relief. On the separate and independently sufficient basis that they cannot meet the "irreparable injury" element of their claim for injunctive relief, Plaintiffs' claim should be denied.

Finally, Defendants reiterate that even if the pending motion for injunctive relief were brought by viable Plaintiffs, which it is not, it would nevertheless fail because it is not brought against viable Defendants. As discussed fully in several of Defendants' prior submissions, Glynn

---

certification has not been granted, but even if it had been, the named Plaintiffs' lack of standing would be fatal to their request for injunctive relief regardless of whether unnamed members of the class might actually have standing to pursue the same claims.

County and Sheriff Jump would not be proper parties subject to injunctive relief even if it were otherwise warranted, because neither of them is the policy maker with respect to the practices at issue. [Dkt. 41 at 8-12, Dkt. 46-1 at 19-23]. Plaintiffs' motion for preliminary injunction should be denied for three separate reasons based solely on the identity of the parties involved in the motion.

## II.     *Defendants' bail practices are constitutionally sound.*

Plaintiffs have failed to identify any constitutional shortcomings in Defendants' current bail practices, and have failed to identify a single instance in which Defendants have not complied with those practices. Instead, Plaintiffs have offered voluminous evidence tailored to the question of whether Defendants' bail practices are *ideal*. As the Eleventh Circuit recently made clear in *Walker v. City of Calhoun*, Plaintiffs' claims in this case are subject to rational-basis review, and that evidence is consequently irrelevant. No. 17-13139, 2018 WL 4000252, at *10 (11th Cir. Aug. 22, 2018).

A recent decision from the Middle District of Alabama, issued the day prior to oral argument in this case, leaves no question that injunctive relief is properly denied here. In *Edwards v. Cofield*, the plaintiffs – represented by several of the same attorneys representing Plaintiffs here – filed a substantively identical suit against officials in Randolph County, Alabama. In March of this year, the district court denied the *Edwards* plaintiffs' motion for a preliminary injunction, which sought the same relief requested in this suit. *Edwards v. Cofield*, 301 F. Supp. 3d 1136 (M.D. Ala. 2018). And on August 28, the court denied the plaintiffs' motion for reconsideration in a thoughtful and detailed order that is relevant in its entirety. *Edwards v. Cofield,* No. 3:17-CV-321-WKW, 2018 WL 4101511, at *3 (M.D. Ala. Aug. 28,

2018).

In particular, Defendants note that the bail practices found to survive rational-basis review in *Edwards* required that bond hearings be held within 72 hours of arrest. *Id.* at *2. Here, Defendants' written Standing Bail Order provides the same protections found to comply with rational basis review in *Edwards*, but Defendants' actual bail practices provide an even higher level of protection for arrestees – hearings to determine indigency, and release on recognizance if appropriate, within 48 hours of arrest.[2] Plaintiffs' request for preliminary injunction on Count I of their Complaint is properly denied here for the same reasons it was denied in *Edwards*.

Likewise, with respect to Count II of Plaintiffs' Complaint, the *Edwards* court correctly rejected the argument offered by Plaintiffs in this case that "additional procedural safeguards" in Defendants' bail practices are constitutionally required. Citing *Walker*, the *Edwards* court reaffirmed its previous conclusion that

> Plaintiff did not show that the "probable value" of the "additional or substitute procedural safeguards" she requested would sufficiently decrease "the risk of an erroneous deprivation" of the interest in pretrial liberty posed by the new standing bond order's procedures in order to justify the additional "fiscal and administrative burdens" that the additional requirements would entail for Defendants. *Edwards*, 2018 WL 4101511 at *3 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

The rationale of the District Court's rulings in *Edwards* is especially instructive here, as identical

---

[2] Even if the Court were to disagree with the District Court in *Edwards* and determine that the constitution requires that bond hearings be held within 48 hours of arrest, no injunctive relief would be required here because Defendants *do* provide bond hearings within that time period. Certainly, if Defendants had *no* written policy on this issue, but in practice they provided bond hearings and released indigent arrestees as appropriate within 48 hours, there would be no basis for a preliminary injunction. An injunction is no more appropriate where Defendants have a written policy providing for bond hearings and subsequent releases of indigent arrestees within 72 hours but those hearings are, in practice, provided within 48 hours.

claims and arguments have been presented in both cases. The *Edwards* court's post-*Walker* reaffirmation that the plaintiffs are not entitled to *any* preliminary injunctive relief only confirms that the same result is warranted here.

### III.     *Plaintiffs are not entitled to an injunction enforcing Defendants' current practices.*

Perhaps realizing that their other claims for injunctive relief are not well-founded, Plaintiffs urged the Court during oral argument to, at a minimum, grant an injunction requiring Defendants to continue adhering to their current bail practices. The Eleventh Circuit, in *Walker v. City of Calhoun*, set forth the framework for evaluating this argument:

> When a government voluntarily ceases [a] challenged action [], there is a presumption that the government will not later resume the action, so the plaintiff bears the burden of showing that there is "a reasonable expectation" that the government "will reverse course and reenact the allegedly offensive" policy. The key inquiry in this mootness analysis therefore is whether the evidence leads the court to a reasonable expectation that the City will reverse course and reenact the allegedly offensive bail policy after this litigation ends.
>
> To determine whether such a reasonable expectation exists, courts look to three broad factors. First, whether the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate our jurisdiction. This requires examining the timing of the repeal, the procedures used in enacting it, and any explanations independent of this litigation which may have motivated it. Second, whether the government's decision to terminate the challenged conduct was unambiguous —i.e., whether the actions that have been taken to allegedly moot the case reflect a rejection of the challenged conduct that is both permanent and complete. And, third, whether the government has consistently maintained its commitment to the new policy or legislative scheme.
> *Walker v. City of Calhoun, GA*, No. 17-13139, 2018 WL 4000252, at *17 (11th Cir. Aug. 22, 2018) (punctuation and citations omitted, alterations adopted).

The Eleventh Circuit held that the District Court in *Walker* did not err in finding that the plaintiffs' claims concerning the city's abandoned prior bail policy were not moot, because there was some evidence that the city could revert to those prior practices after the conclusions of

litigation. However, the facts of this case stand in stark contrast to those of *Walker* with respect to potential reversion to prior bail policies, and a comparison of the two cases demonstrates that the opposite conclusion is warranted here.

The *Walker* court held that the first factor – whether the change in conduct resulted from substantial deliberation or was merely an attempt to manipulate jurisdiction – cut against the city because the City "[had] been unnecessarily secretive," refusing the explain the process for adopting the city's Standing Bail Order and asserting attorney-client privilege and the work-product doctrine in response to interrogatories on that subject. *Id.* at *18. Here, by way of contrast, Defendants have been wholly transparent about the manner in which the current Standing Bail Order was conceived and adopted, as well as the timing of that process. In particular, Judge Atwood testified in detail and at length that he knew from his work in the Legislature that Georgia law regarding bail determination was going to change, that knowledge of those changes was the impetus for the creation of the Standing Bail Order, and that the decision to adopt Defendants' current practices would have occurred regardless of the filing of this suit. The unrebutted testimony in this case demonstrates that Defendants' adoption of their current bail practices resulted from substantial deliberation set into motion by events entirely unrelated to this litigation.

With respect to the second factor – whether abandonment of the challenged conduct was unambiguous – the *Walker* court again found against the city on the basis of the city's secretiveness about the adoption of its new bail procedures: "[W]hile it is perhaps unlikely, we cannot say that [the judge who adopted the standing bail order] might not revert to the original policy, given the lack of transparency surrounding the issuance of the Standing Bail Order."

*Walker*, 2018 WL 4000252, at *18. Here, again, Defendants have been entirely forthcoming about the manner in which the Standing Bail Order was adopted, and there is nothing in the record to suggest that Defendants' adoption of that Order was not wholehearted. Although the Standing Bail Order was signed by Judge Altman, it was created with input from Judge Atwood as well, and has been implemented in both of their courts. Moreover, due to the very same changes in state law that prompted the creation of the Standing Bail Order, reversion to Defendants' prior bail practices would be impossible.

Finally, whereas the *Walker* court could not sufficiently evaluate the third factor – the government's commitment to its new policy – because the District Court in that case entered an injunction shortly after the new policy went into effect, here, there is abundant and unrebutted evidence that Defendants have consistently met and exceeded the requirements of the Standing Bail Order. After reviewing records for nearly 400 arrestees, Plaintiffs identified only seven for whom they had some question as to whether proper procedures had been followed. [Dkt. 86-42, 87-1]. At oral argument, Defendants showed that they complied with their bail practices – the Standing Bail Order, as modified by Defendants' commitment to provide hearings within 48 rather than 72 hours – for each of those arrestees that was otherwise subject to immediate release pursuant to the bail schedule. Plaintiffs have failed to identify a single specific person with respect to whom Defendants have *not* followed their current bail practices, and this third factor thus cuts in Defendants' favor.

Plaintiffs cannot meet the burden of showing a "reasonable expectation" that Defendants "will reverse course and reenact" their prior bail policies absent an injunction forbidding them to do so. All three factors to be evaluated in deciding whether such a showing has been made weigh

heavily in favor of Defendants, and due to the intervening changes in state law that catalyzed Defendants' adoption of new practices, Defendants could not revert to their prior policy even if they wanted to. Plaintiffs' request for injunctive relief requiring Defendants to do exactly what Defendants are already doing should be denied.

## Conclusion

For the foregoing reasons, as well as the reasons articulated in their prior briefs and at oral argument, Defendants respectfully request that the Court deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted, this tenth day of September, 2018.

/s/ Richard K. Strickland
Richard K. Strickland
Georgia State Bar Number: 687830

/s/ Bradley J. Watkins
Bradley J. Watkins
Georgia State Bar Number: 740299

/s/ Emily R. Hancock
Emily R. Hancock
Georgia State Bar Number: 115145

BROWN, READDICK, BUMGARTNER,
CARTER, STRICKLAND & WATKINS, LLP
Post Office Box 220
Brunswick, GA 31521
(912) 264-8544
(912) 264-9667 FAX
rstrickland@brbcsw.com
bwatkins@brbcsw.com
ehancock@brbcsw.com

ATTORNEYS FOR DEFENDANTS

Aaron W. Mumford
Georgia Bar No. 529370
701 G. Street, 2ND Floor
Brunswick, GA 31520
(912) 554-7597

ATTORNEY FOR GLYNN COUNTY, GEORGIA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| MARGERY FREIDA MOCK and ERIC SCOTT OGDEN, JR., individually and on behalf of others similarly situated,<br><br>        Plaintiffs<br><br>v.<br><br>GLYNN COUNTY, GEORGIA; E. NEAL JUMP, Glynn County Sheriff; ALEX ATWOOD, Glynn County Chief Magistrate Judge; and B. REID ZEH III, Glynn County Misdemeanor Public Defender,<br><br>        Defendants | *<br>*<br>*<br>*<br>*<br>*<br>* Case Number: 2:18-cv-25<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

Submitted this tenth day of September, 2018.

/s/ Emily R. Hancock
Emily R. Hancock
Georgia Bar Number: 115145
Attorney for Defendants

12