UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| Margery Frieda Mock and Eric Scott Ogden, Jr., *individually and on behalf of those similarly situated*,<br><br>         Plaintiffs,<br><br>    v.<br><br>Glynn County, Georgia; E. Neal Jump, Glynn County Sheriff; Alex Atwood, Glynn County Magistrate Judge; and B. Reid Zeh, III, Glynn County Misdemeanor Public Defender;<br><br>         Defendants. | Case No. 2:18-cv-0025-RSB-BWC<br><br><br>(Class Action) |

## AMENDED DECLARATION OF ROBERT FRANKLIN COX, JR.

I, Robert Franklin Cox, Jr., under penalty of perjury, hereby state as follows:

1. I am a 55 year-old man.

2. I have lived in Glynn County for approximately 8 years.

3. For the past several years, I have struggled with an alcohol abuse disorder. Because of this struggle, I have accrued a significant criminal history and been unable to keep a job. I am currently receiving in-patient treatment at Hudson Hill for my disease.

4. On multiple occasions, I have been arrested and charged with misdemeanors in Glynn County and required the services of the Glynn County State Court public defender, first, I think in 2013.

5. In what I remember being a 2013 case, I was charged with theft by shoplifting. I qualified for a public defender because I had no money. I expected to be asked about getting a public defender. No one asked me. No public defender came to see me. Days later, a jail employee told me that I was going to court in a few hours. When I

1

got to court it looked like an assembly line of people going before the judge to plead guilty. When my turn came, I was told to stand at a desk before the judge. A man stood on my right who I had never met before. No one told me who he was. He told me that it was better if I pleaded guilty. I did what he told me to do. I do not know how this man was appointed. I later learned this man was Reid Zeh.

6. Approximately seven other times the same thing happened. I was arrested. No one told me about a public defender or asked if I needed one. I would meet Mr. Zeh in court and plead guilty, not knowing there were other options and wanting to get out of jail. Mr Zeh never came to see me. I have never heard of Mr. Zeh seeing any public defender clients in the jail.

7. In one case after approximately seven arrests, I bonded out with my mother's financial assistance. When I went to my court date in that case on April 1, 2015, Mr. Zeh was standing in court as in my prior experiences to represent me as the public defender. I was ready to plead guilty, and Mr. Zeh pointed to the sentencing paperwork and instructed me to sign it to plead guilty. However, Judge Bart Altman stopped me and directed me to talk to the public defender, Mr. Zeh. I went to Mr. Zeh's office right after court. Mr. Zeh indicated that he would charge me $2,500 to represent me. He did not refer me to a public defender. For this money, Mr. Zeh said he would take care of my case.

8. I could not afford this fee or to pay for any private attorney. I believed that Mr. Zeh knew my financial circumstances as he had represented me previously as the public defender. Though I was working at Mercedes-Benz at the time, I was living paycheck to paycheck and my income was below the federal poverty limits. I told my

mother about the fee. My family must have paid Mr. Zeh $2,500 because the charges were later dropped.

9. I do not believe Mr. Zeh would have assisted me in my case had my family not paid him $2,500. If my family had not come up with the $2,500, I believe I would have had to represent myself or hire a private attorney in order to assert my valid defenses in my case.

10. I have been charged with misdemeanors in Glynn County more times than I can remember. My attorneys in this case have refreshed my memory by sharing a handful of my court records, which they obtained via an open records request. Based on reviewing those records, I can describe a few of my cases over the last several months.

11. On June 3, 2016, I was arrested on a misdemeanor charge of theft by taking and booked into the Glynn County Detention Center. I could not afford a pre-set bail amount required for my release. I was taken to a proceeding referred to as "rights read" on June 6, 2016. At the proceeding, a presiding judge asked me a handful of questions, and set my bail. No public defender was there to assist me. I still could not afford to pay the bail amount, and the judge did not ask me what I could afford to pay. I remained incarcerated for a month, until July 9, 2016, when I bonded out via a for-profit bondsman who my mother paid. I was sentenced on that charge on August 10, 2016.

12. On July 22, 2016, I was arrested on a misdemeanor charge of public drunkenness and booked into the Glynn County Detention Center. Once again, I could not afford a pre-set bail amount required for my release. I was taken to a "rights read" proceeding on July 25, 2016, which went in the same manner as the proceeding in June of that year. After "rights read," I still could not afford the bail set in my case, and which

3

was set without asking what I could afford to pay. I remained incarcerated until August 10, 2016, when I pled guilty in order to get out of jail. I also received a 12 months suspended sentence and 90 days jail time with credit time served.

13.     On November 9, 2016, I was arrested on a misdemeanor charge of criminal trespass and booked into the Glynn County Detention Center. I could not afford to pay a pre-set bond amount required for my release. I was taken to a "rights read" proceeding on November 11, 2016. I continued to be detained on a bail requirement I could not afford—and which no one asked whether I could pay—until over three months later, February 22, 2017. On February 22, 2017, I was sentenced to 90 days in jail (with credit time served), 100 hours of community service, and a year of probation with a monthly fee of $45.00. I was also ordered to pay a supervision fee of $36.00 per month.

14.     On June 24, 2017, I was arrested on misdemeanor charges of criminal trespass and public intoxication. As with my other arrests, because I could not afford the pre-set secured bail requirement set on my release, I remained in jail. I went to a "rights read" hearing on June 26, 2017, and—as with the others I had been through—no public defender assisted me and no one inquired into my ability to afford bail. I remained incarcerated until proceeding to a guilty plea hearing on July 5, 2017. As was true in every misdemeanor case in which I've been charged, no public defender sought a reduction of my bail amount, but rather only met with me during my sentencing hearing. I was sentenced to 180 days in jail (with credit time served), 100 hours of community service, and a year of probation with a monthly fee of $45.00, as well as 90 hours of AA meetings in 90 days and 3 hours of AA meeting a week for the remainder of probation.

15. Since 2015, I have had no income. Throughout the time period of the arrests I've described here, my income put me below the federal poverty limit.

16. I learned about Mr. Zeh from my first experience with Mr. Zeh. No jail employee ever told me about a public defender. I learned that Mr. Zeh would not visit me in jail. I knew that I would see Mr. Zeh when I walked in to court. Mr. Zeh never visited me in jail when I was locked up on a pending misdemeanor charge.

17. On March 27, 2016, while I was incarcerated on a misdemeanor charge, my only daughter was killed at the age of twenty-two in a car accident. Jail staff told me that I would have to pay $600 in order to be transported to her funeral with correctional officers accompanying me. I would not be allowed to change clothes and would be shackled the entire time. I did not have the assistance of a lawyer to seek release to attend her funeral on different terms. I did not have the money to attend, and even if I had, I could not imagine myself attending my daughter's funeral under those terms.

18. In June 2018, I reviewed a version of this affidavit with an attorney in this case and signed it. This week, I told my attorneys about about my daughter's death and missed funeral, which caused me unspeakable pain and suffering. In order to share that information and to be certain that the facts are presented in as accurate a manner as possible, I am executing this updated affidavit.

I affirm under penalty of perjury that this is true and correct.

Signed,

_____          ___12-6-18___
Robert Cox                            Date